Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 29, 2020

**2020 CO 68**

**No. 20SA120,** *In re Lucy & Meresa*—§ 18-1-405(6)(g)(I), C.R.S. (2019)—Speedy Trial—Tolling—Contested Continuance Due to "Unavailability of Evidence Material to the State's Case"—Public Health Crisis.

In this original proceeding, the supreme court considers whether a trial court may grant the prosecution's contested request for a continuance with a tolling of the statutory speedy trial period based on a public health crisis like the COVID-19 pandemic. The supreme court holds that, absent the defendant's consent, section 18-1-405(6)(g)(I), C.R.S. (2019), authorizes a trial court to grant the prosecution a continuance with a tolling of the speedy trial period for up to six months if the prosecution establishes that: (a) as a result of a public health crisis, evidence material to its case is unavailable; (b) it has exercised due diligence to obtain that evidence; and (c) there are reasonable grounds to believe that the unavailable evidence will be available on the new trial date. Because the county court erred, the supreme court makes the rule to show cause absolute and remands for further proceedings consistent with this opinion.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 68

**Supreme Court Case No. 20SA120**
*Original Proceeding Pursuant to C.A.R. 21*
Gilpin County Court Case Nos. 19M137 & 19M456
Honorable David C. Taylor, Judge

_____

### In Re

### Plaintiff:

The People of the State of Colorado,

v.

### Defendant:

Maurice Leviticus Lucy,

### and

### Plaintiff:

The People of the State of Colorado,

v.

### Defendant:

Desta Adane Meresa.

_____

### Rule Made Absolute

*en banc*
June 29, 2020

_____

**Attorneys for Plaintiff:**
Philip J. Weiser, Attorney General
L. Andrew Cooper, Deputy Attorney General
Joseph G. Michaels, Senior Assistant Attorney General
 *Denver, Colorado*

Peter A. Weir, District Attorney, First Judicial District
Colleen R. Lamb, Appellate Deputy District Attorney
 *Golden, Colorado*

**Attorneys for Defendants:**
Megan A. Ring, Public Defender
Mitchell Ahnstedt, Deputy Public Defender
Cody Hill, Deputy Public Defender
 *Golden, Colorado*

**Attorneys for Amicus Curiae Gard Law Firm, LLC:**
Jeffrey S. Gard
Austin Q. Hiatt
 *Boulder, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1 COVID-19, the highly contagious and potentially deadly illness caused by the novel coronavirus, has triggered a global pandemic the likes of which we haven't experienced in over a century. Unsurprisingly, it has wreaked havoc on just about every aspect of our lives. The criminal justice system has not been spared from the ravages of this malady. In particular, trial courts have struggled with effectuating a defendant's statutory right to speedy trial amid this unparalleled public health crisis.

¶2 We issued a rule to show cause in these two cases out of Gilpin County, hoping to provide guidance on whether a trial court may grant the prosecution's contested request for a continuance with a tolling of the statutory speedy trial period based on a public health crisis like the COVID-19 pandemic. We hold that, absent the defendant's consent, section 18-1-405(6)(g)(I), C.R.S. (2019), authorizes a trial court to grant the prosecution a continuance with a tolling of the speedy trial period for up to six months if the prosecution establishes that: (a) as a result of a public health crisis, evidence material to its case is unavailable; (b) it has exercised due diligence to obtain that evidence; and (c) there are reasonable grounds to believe that the unavailable evidence will be available on the new trial

date.[1] Because the county court erred in the two cases before us, we make the rule to show cause absolute and remand for further proceedings consistent with this opinion.

## I. Procedural History

¶3 *People v. Lucy* and *People v. Meresa* are unrelated cases from Gilpin County, which is part of the First Judicial District. Both cases are pending in front of the same county court judge.

¶4 In *Lucy*, the prosecution has charged Maurice Leviticus Lucy with criminal mischief, a class 2 misdemeanor. Lucy pled not guilty on June 12, 2019, but subsequently requested a continuance of his trial on October 9, 2019. As a result, his six-month speedy trial period was set to expire on April 9, 2020. The county court scheduled his jury trial to commence on March 17, 2020, within the speedy trial deadline.

¶5 In *Meresa*, the prosecution has charged Desta Adane Meresa with violation of a criminal protection order and unlawful sexual contact, both class 1 misdemeanors. Meresa pled not guilty on October 9, 2019, which meant that his six-month speedy trial period was set to expire on April 9, 2020, the same day

---

[1] Crim. P. 48(b)(6)(VII)(A) mirrors section 18-1-405(6)(g)(I). For the sake of convenience, we limit our discussion in this opinion to the statute.

Lucy's speedy trial period was set to expire. The county court scheduled Meresa's jury trial to commence on March 17, the same day Lucy's case was scheduled for trial.

¶6 On March 16, 2020, the day before both cases were scheduled for trial, the Chief Judge of the First Judicial District ("the Chief Judge") issued an administrative order requiring that all jury trials set in the district through May 1, 2020, be vacated unless there were exigent circumstances present or speedy trial constraints. The administrative order explained that this drastic measure was necessitated by the COVID-19 pandemic. In response to the Chief Judge's order, the county court vacated the trials in the two cases at issue. The prosecution immediately filed a motion to continue and requested a tolling of the speedy trial period in each case. It relied on section 18-1-405(6)(g)(I), which requires the tolling of the speedy trial period for up to six months under certain circumstances when the court grants a continuance at the prosecution's request without the defendant's consent. In each motion, the prosecution requested specific factual findings related to the tolling provision in subsection (6)(g)(I). Without resolving the motions, the court continued both cases until May 13, more than a month past the April 9 speedy trial deadline.

¶7 On March 25, the Chief Judge issued another administrative order, this one cancelling all jury summonses and requiring that all jury trials set in the district

through May 15 be vacated. The next day, the prosecution moved for an emergency hearing in *Lucy* and *Meresa*, reiterating that the May 13 date scheduled in each case was past the April 9 speedy trial deadline. The prosecution again requested findings with respect to its invocation of the tolling provision in subsection (6)(g)(I).

¶8 On April 3, the county court responded by noting that it had reviewed the prosecution's motions and that, "[g]iven [the COVID-19 related] developments," it had "made the decision to vacate the trial" in each matter. The court pointed out that jurors would be in "extremely close proximity" to each other if required to appear for trial. It added that proceeding to trial in these and other cases during a pandemic would prompt jurors to question the justice system's dedication to the public's well-being. Though declining to issue a final ruling on either of the prosecution's motions, the court made a preliminary finding in each case that a continuance was necessary. It then gave Lucy and Meresa leave to challenge this preliminary finding at the May 13 hearing. The court did not address the prosecution's request to toll the speedy trial period. Nor did it make findings regarding speedy trial, as the prosecution had asked.

¶9 Three days later, on April 6, the prosecution submitted forthwith motions seeking clarification. In response, the court confirmed in each case that its finding that a continuance was necessary was preliminary and that the final ruling on the

6

prosecution's motion would have to be delayed until the May 13 hearing because there was no way to safely hold an earlier hearing that would permit an objection to be lodged in person. In the meantime, the court assured the prosecution that both requests to toll speedy trial had been preserved.

¶10 The prosecution then filed a combined petition invoking our original jurisdiction under C.A.R. 21. After reviewing the petition, we issued a rule to show cause.

## II. Original Jurisdiction

¶11 It is within our sole discretion to exercise our original jurisdiction pursuant to Rule 21. C.A.R. 21(a)(1) ("Relief under this rule . . . is a matter wholly within the discretion of the supreme court."). In exercising our discretion, we are cognizant that Rule 21 provides "an extraordinary remedy that is limited in both purpose and availability." *People v. Rosas*, 2020 CO 22, ¶ 19, 459 P.3d 540, 545 (quoting *Villas at Highland Park Homeowners Ass'n v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 22, 394 P.3d 1144, 1151); *accord* C.A.R. 21(a)(1) ("Relief under this rule is extraordinary in nature . . . ."). Consistent with the narrow scope of Rule 21(a)(1), we have exercised our original jurisdiction in limited circumstances, including "when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, or when a petition raises issues of significant

7

public importance that we have not yet considered." *Rosas*, ¶ 19, 459 P.3d at 545 (quoting *People v. Rowell*, 2019 CO 104, ¶ 9, 453 P.3d 1156, 1159).

¶12 In asking us to exercise our original jurisdiction, the prosecution contends that a Rule 21 proceeding is the only available appellate remedy it has and that these cases present issues of first impression that are of significant public importance. We agree on both fronts.

¶13 Requiring the prosecution to wait to raise its claims until it can file direct appeals would be inappropriate. Notwithstanding the use of a preliminary label to characterize the actions it took, the county court continued both trials. Its actions had the same effect as if it had issued final orders continuing the cases. Yet, the court did not address the question of speedy trial in either case, even though the new hearing date set was past the speedy trial deadline. Nor did it resolve the prosecution's requests to toll speedy trial pursuant to section 18-1-405(6)(g)(I) and to make findings related to speedy trial.

¶14 We understand that the court's postponement of the trials was precipitated by the Chief Judge's first order. But that order did not sanction speedy trial violations; to the contrary, it made an exception for cases in which the speedy trial deadline was imminent. Here, the court continued both cases past the speedy trial deadline without giving the prosecution an adequate opportunity to be heard and without making any findings or issuing final rulings. Under these circumstances,

8

if the prosecution were precluded from obtaining relief now, it would likely be left with no remedy.

¶15 Lucy and Meresa nevertheless rely on C.R.C.P. 106(a)(4) in urging us to decline to exercise our original jurisdiction.[2] Even assuming, without deciding, that the prosecution could have sought relief through a Rule 106(a)(4) proceeding in district court, we still would choose to exercise our original jurisdiction. Review under Rule 106(a)(4) would have been problematic because the county court judge postponed the trials based on the Chief Judge's first order, and the district court judge presiding over the Rule 106(a)(4) complaint would have been subject to the same order. The Rule 106(a)(4) proceeding also may have placed that district court judge in the uncomfortable position of having to interpret and pass judgment on the Chief Judge's first order.

¶16 More importantly, regardless of the availability of relief pursuant to a Rule 106(a)(4) proceeding, the prosecution's Rule 21 petition raises an issue of first impression that has statewide importance. We have never had occasion to consider whether an unprecedented public health crisis like COVID-19 may justify

---

[2] As pertinent here, in an action brought pursuant to C.R.C.P. 106(a)(4), the district court must determine whether the county court "exceeded its jurisdiction or abused its discretion." C.R.C.P. 106(a)(4)(I).

a speedy trial tolling continuance under section 18-1-405(6)(g)(I).  We have been

fortunate.  That is, until now.  The urgency to have our court resolve the question

today cannot be overstated.

¶17    In short, we conclude that these are appropriate cases in which to exercise

our original jurisdiction.  We therefore do so.

## III.  Standard of Review

¶18    Having determined to exercise our original jurisdiction, we must analyze

the merits of the legal issue raised by the prosecution.  We pause only long enough

to identify the applicable standard of review.

¶19    Our resolution of the question before us turns on our interpretation of

section 18-1-405.  The interpretation of a statute involves "a question of law, which

we review de novo."  *Rosas*, ¶ 21, 459 P.3d at 545 (quoting *People v. Steen*, 2014 CO

9, ¶ 9, 318 P.3d 487, 490).

## IV.  Analysis

¶20    Our starting block is section 18-1-405, Colorado's speedy trial statute.

Section 18-1-405 guarantees defendants in criminal cases "the right to a speedy

trial."  *People v. McMurtry*, 122 P.3d 237, 240 (Colo. 2005).  Subsection (1) of that

statute provides, in pertinent part, that when a defendant "is not brought to

trial . . . within six months from the date of the entry of a plea of not guilty, . . . the

pending charges shall be dismissed, and the defendant shall not again" be charged

"for the same offense, or for another offense based upon the same act or series of acts arising out of the same criminal episode." § 18-1-405(1). The protective cloak of this statutory provision "is meant to give effect to the constitutional right to a speedy trial." *McMurtry*, 122 P.3d at 240. Hence, the statute doesn't actually create any rights; it simply functions as a vessel for securing the constitutional right to a speedy trial. *Id.* at 241.

¶21 The burden of compliance with section 18-1-405(1) lies with the trial court and the prosecution. *People v. DeGreat*, 2020 CO 25, ¶ 17, 461 P.3d 11, 15. To satisfy its burden, the trial court must make "a record sufficient for an appellate court to determine statutory compliance." *Marquez v. Dist. Court*, 613 P.2d 1302, 1303–04 (Colo. 1980).

¶22 Subsections (3), (3.5), (4), and (5.1) of the speedy trial statute set forth circumstances when the period within which the trial must be held may be extended. For example, subsection (3) states that where, as in Lucy's case, the trial date has been fixed and the defendant thereafter requests and receives a continuance, "the period within which the trial shall be had is extended for an additional six-month period from the date upon which the continuance was granted." § 18-1-405(3).

¶23 Subsection (6) is a first cousin of subsections (3), (3.5), (4), and (5.1). Whereas the latter subsections authorize the six-month speedy trial period in subsection (1)

to be *extended* under some circumstances, subsection (6) identifies the "periods of time" that must be *excluded* in computing the time within which a defendant must be brought to trial under subsection (1). § 18-1-405(6). Stated differently, in certain situations, subsection (6) tolls the six-month speedy trial period. As relevant here, it reads as follows:

> (6) In computing the time within which a defendant shall be brought to trial as provided in subsection (1) of this section, the following periods of time shall be excluded:
>
> . . . .
>
> (g) The period of delay not exceeding six months resulting from a continuance granted at the request of the prosecuting attorney, without the consent of the defendant, if:
>
> (I) The continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that this evidence will be available at the later date . . . .

*Id.*

¶24    But does the type of "continuance" contemplated by subsection (6)(g)(I) include a continuance justified by a public health crisis such as the COVID-19 pandemic? Today we conclude that it does, so long as the prosecution establishes that: (a) as a result of the public health crisis, evidence material to its case is unavailable; (b) it has exercised due diligence to obtain that evidence; and (c) there

are reasonable grounds to believe that the unavailable evidence will be available on the new trial date.[3]

¶25   The prosecution may satisfy the first of these three requirements through a variety of proffers.  By way of example, it may do so if the presence of witnesses in general cannot be safely compelled due to a public health crisis.  Evidence material to the prosecution's case would obviously be unavailable as a result of a public health crisis in that situation.  Similarly, the prosecution may establish the first requirement if evidence material to its case is to be presented by a particular witness whose presence cannot be safely compelled due to a public health crisis. Such a witness could be someone whose age or health condition places her in the COVID-19 vulnerable population.

¶26   As it relates to the second requirement, the prosecution must show that material evidence is unavailable despite the exercise of due diligence.  If the

---

[3] Motivated by the challenges inherent in the COVID-19 pandemic, we recently amended two of our rules of criminal procedure, Rules 24 and 43, to address "a public health crisis."  We amended Rule 24, "Trial Jurors," by adding paragraph (c)(4), which allows trial courts to declare a mistrial at any time before trial on the ground that "a public health crisis" prevents the safe assembly of a fair jury pool. *See* Crim. P. 24(c)(4).  And we amended Rule 43, "Presence of the Defendant," by adding paragraphs (f)(1) and (f)(2), which authorize trial courts, in the event that "a public health crisis" exists and certain circumstances are present, to hold most proceedings by contemporaneous audio communication and/or interactive audiovisual device.  *See* Crim. P. 43(f).

prosecution's lack of due diligence is to blame for the unavailability of evidence material to its case, subsection (6)(g)(I) cannot toll the speedy trial period. In other words, the prosecution cannot use a public health crisis as an excuse for its lack of due diligence.

¶27 Finally, with regard to the third requirement, the prosecution must demonstrate that there is a reasonable basis to believe that the unavailable material evidence is only temporarily unavailable and will be available on the next trial date. This requirement cannot be met if the evidence is permanently unavailable or if it is unreasonable to think that the evidence will be available on the new trial date. While there is some guarded optimism that the COVID-19 pandemic will subside in the not-too-distant future, we recognize that the road to recovery is laden with uncertainty. But subsection (6)(g)(I) doesn't demand infallible projections or clairvoyant forecasts. It requires "reasonable grounds" to believe that the evidence will be available on the next trial date.

¶28 The three-pronged showing under subsection (6)(g)(I) and the trial court's corresponding determinations must be made on a case-by-case basis. Upon the filing of a subsection (6)(g)(I) motion, the prosecution must be afforded an opportunity to make the requisite showing and the trial court must ensure that there is an adequate record that includes a final ruling supported by findings.

14

¶29 In our view, the interpretation of subsection (6)(g)(I) we adopt today effectuates the legislature's intent by giving the language of the statutory provision its plain and ordinary meaning. Our primary purpose in construing a statute "is to ascertain and give effect to the legislature's intent." *People v. Cali*, 2020 CO 20, ¶ 15, 459 P.3d 516, 519. We look first and foremost at "the language the legislature has actually chosen to express itself." *In re People in Interest of A.A.*, 2013 CO 65, ¶ 10, 312 P.3d 1170, 1172. We must give the statutory words and phrases their plain and ordinary meaning. *Cali*, ¶ 15, 459 P.3d at 519. And we are required to read those words and phrases in context and construe them based on the rules of grammar and common usage. *Id.*

¶30 We acknowledge that subsection (6)(g)(I) does not mention a continuance justified by a public health crisis. But it doesn't exclude such a continuance either. In fact, it contains no specifics vis-à-vis *the reason* that evidence material to the prosecution's case is unavailable. To rule that subsection (6)(g)(I) prohibits a continuance triggered by a public health crisis would force us to add words to that provision or to otherwise change the words in that provision. We may partake in neither of these acts. *Colo. Dep't of Revenue v. Creager Mercantile Co.*, 2017 CO 41M, ¶ 25, 395 P.3d 741, 745 ("We will not substitute or add words to statutes."). Had the legislature intended to except from subsection (6)(g)(I) continuances based on a public health crisis, it presumably would have said so. Instead, what the

legislature said is that when the prosecution establishes the "unavailability" of evidence material to its case—regardless of the reason for such unavailability—it may be entitled to a continuance with a tolling of the speedy trial period for up to six months.

¶31 Because the word "unavailability" is not defined in section 18-1-405, we may discern its plain and ordinary meaning by consulting a recognized dictionary. *Cowen v. People*, 2018 CO 96, ¶ 14, 431 P.3d 215, 218–19. Merriam-Webster Dictionary defines "unavailable" as "not possible to get or use." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*unavailable*; [https://perma.cc/U7PF-P2QS]. Thus, if the prosecution cannot get or use evidence material to its case—including, for instance, because a public health crisis prevents it from safely compelling the presence of witnesses in general or a specific witness in particular—then that evidence is unavailable for purposes of subsection (6)(g)(I).

¶32 Here, in each case, the prosecution cited the COVID-19 public health crisis in moving for a continuance with a tolling of the speedy trial period pursuant to subsection (6)(g)(I). Without affording the prosecution a suitable opportunity to be heard and without making an adequate record or issuing a final ruling, the county court continued each trial beyond the speedy trial deadline. Though we appreciate the extraordinary situation the county court confronted and fully

16

understand that its actions were sparked by an administrative order from the Chief Judge, this was nevertheless error.

¶33 On remand, the county court must give the prosecution an opportunity in each case to make the showing required under subsection (6)(g)(I). The court must then rule on each motion and make findings with respect to the speedy trial period. We note that "[t]he period of delay caused by [this] interlocutory appeal" must be excluded from the computation of time within which Lucy and Meresa must be brought to trial. § 18-1-405(6)(b); *see also* Crim. P. 48(b)(6)(II) (indicating that "[t]he period of delay caused by an interlocutory appeal, . . . or after issuance of a rule to show cause in an original action" must be excluded from the computation of time within which a defendant must be brought to trial).

## V. Conclusion

¶34 Seemingly overnight, we find ourselves living in an almost unrecognizable new world—one even Nostradamus couldn't have foreseen. The COVID-19 pandemic has turned our lives upside down and made it virtually impossible to hold jury trials in criminal cases. Yet, defendants continue to have a statutory right to speedy trial under section 18-1-405(1). This has unfairly placed our trial courts in a catch-22. Though this opinion is by no means a panacea, we are hopeful that it will provide helpful direction on when a prosecution's contested request for a

17

continuance based on a public health crisis like COVID-19 may be granted with a tolling of the speedy trial period for up to six months.

¶35     The county court erred in *Lucy* and *Meresa*.  Accordingly, we make the rule to show cause absolute and remand for further proceedings consistent with this opinion.