489 P.3d 1233
In re: The PEOPLE of the State of Colorado, Plaintiff,
v.Ian Christopher SHERWOOD, Defendant.
Supreme Court Case No. 21SA85 Supreme Court of Colorado.
June 28, 2021
Attorneys for Plaintiff: Michael J. Allen, District Attorney, Fourth Judicial District Jenna Martin, Deputy District Attorney Tanya A. Karimi, Deputy District Attorney, Colorado Springs, Colorado
Attorneys for Respondent El Paso County District Court: Philip J. Weiser, Attorney General, Laurie Jaeckel, Assistant Attorney General, Denver, Colorado
No appearance on behalf of Ian Christopher Sherwood.
En banc
JUSTICE SAMOUR delivered the Opinion of the Court.
¶1 The tolling provisions of our speedy trial statute function a lot like time-outs in most professional team sports. Just as the ten-minute clock for each quarter of a Women's National Basketball Association ("WNBA") game stops winding down during a time-out, the six-month speedy trial clock stops winding down when the speedy trial period is tolled. Hence, in the same way that a time-out extends the real time of a WNBA quarter without actually adding to the preset ten-minute game time , a tolling provision extends the real time of the speedy trial period without actually adding to the preset six-month statutory speedy trial time.
¶2 But the speedy trial statute's tolling provisions work differently than their counterpart extension provisions, which do add time to the preset six-month statutory speedy trial period. As we discuss in this opinion, while the tolling and extension provisions both ultimately extend the real time within which a defendant must be tried, the difference between them is not without a distinction —it impacts the computation of the new speedy trial deadline. Thus, as relevant here, when a court declares a mistrial, the computation of the next speedy trial deadline will vary depending on whether the speedy trial period is extended or tolled. ¶3 Last year, while in the throes of the COVID-19 pandemic, we approved the addition of paragraph (c)(4) to Crim. P. 24 ("Trial Jurors") to permit a trial court, either upon motion of a party or on its own motion, to declare a mistrial at any time before trial on the ground that a fair jury pool cannot be safely assembled as a result of a public health crisis or limitations brought about by such crisis. People v. Lucy, 2020 CO 68, ¶ 24 n.3, 467 P.3d 332, 337 n.3. Today, we endeavor to clarify how to calculate the new speedy trial deadline following a mistrial (including one declared under Rule 24(c)(4) ). We hold that a mistrial triggers a tolling, not an extension, of the speedy trial period. See § 18-1-405(6)(e), C.R.S. (2020). We further hold that when a trial court declares a mistrial, section 18-1-405(6)(e) requires only reasonable delays attributable to the mistrial, not to exceed three months, to be excluded from the computation of time within which a defendant must be brought to trial.1 ¶4 In this case, the trial court believed that its March 1, 2021 mistrial declaration pursuant to Rule 24(c)(4) automatically extended the six-month statutory speedy trial period by three months from the date of the mistrial—presumably until June 1. This was error. The mistrial merely tolled the six-month speedy trial period for up to three months from the mistrial date. And, because the delay between the date of the mistrial (March 1) and the new trial date (April 26) was reasonable, attributable to the mistrial, and not in excess of three months, it must be excluded in its entirety from the speedy trial period. Under the circumstances present here, the speedy trial period was tolled (i.e., the speedy trial period was on time-out) between March 1 and April 26. Thus, since there were eight days left in the speedy trial period on March 1, there would have been eight days left in the speedy trial period on April 26, which would have made the new speedy trial deadline May 4 (April 26 + 8 days).
¶5 The People brought this original proceeding because they were concerned that the April 26 trial date fell outside the speedy trial period. Inasmuch as we conclude that the April 26 trial date landed within the speedy trial period, we discharge the rule to show cause we issued in response to the People's C.A.R. 21 petition invoking our jurisdiction. We remand the case to the trial court for further proceedings consistent with this opinion.
I. Procedural History
¶6 The People charged Ian Christopher Sherwood with one count of possession of methamphetamine, a level 4 drug felony, and one count of possession of drug paraphernalia, a drug petty offense. Sherwood pled not guilty to both charges on September 9, 2020. The trial court and the parties agreed at that time that the speedy trial period would expire six months later, on March 9, 2021. Therefore, the court set a jury trial date before March 9 — on January 25.
¶7 On January 6, over Sherwood's objection, the People requested and received a continuance of the January 25 trial date. The court rescheduled the trial for March 1, eight days before the March 9 speedy trial deadline.
¶8 On March 1, both parties appeared and announced ready for trial. However, the trial court found that it could not safely assemble a fair jury pool "as a result of a public health pandemic." The court explained as follows: "We cannot seat jurors for Division 15 today" because "we don't have any jurors for Division 15." Before us, the People and the trial court agree that the court declared a mistrial on March 1 pursuant to Rule 24(c)(4).2 The trial was then postponed for one week until March 8.
¶9 On March 8, counsel for both parties appeared in person again. But Sherwood attended virtually, apparently believing that his personal appearance wasn't required. The court continued the trial until the following day, March 9, and instructed Sherwood to appear in person. At the People's request, the court confirmed that it had declared a mistrial on March 1 and that it had three months from March 1 to reset the trial within speedy trial time limits.3 Sherwood did not disagree or otherwise object to this statement.
¶10 On March 9, Sherwood and counsel for both parties appeared in person. However, the court found that it still could not safely assemble a fair jury pool because it could not "bring enough jurors into the building" due to the COVID-19 pandemic. The court reiterated that it had declared a mistrial on March 1 pursuant to Rule 24(c)(4). Neither party took issue with this statement. In calculating the new speedy trial deadline, the court concluded, consistent with the People's assertion the day before, that the March 1 mistrial had extended the speedy trial deadline by three months from the date of the mistrial. Consequently, the court seemed to be under the impression that it had until June 1 to reset the case for trial.4 After consulting the courtroom calendar, the division clerk found April 26 as a date when the court was available to preside over Sherwood's trial. The court thus postponed the trial until April 26.
¶11 Sherwood's counsel then objected to the March 1 mistrial and the three-month extension of the speedy trial deadline. He urged the court to exercise its discretion and dismiss the case. The People opposed the request for dismissal and, in passing, asked for another mistrial.
¶12 The court denied Sherwood's request to dismiss, reasoning that "the continuances" had been prompted by "the court's inability to seat a jury in this case due to the public health pandemic, not ... the conduct of the prosecution." But the court also declined to declare another mistrial, as the People had asked. At the end of the hearing, the court made plain that it had proceeded under Rule 24(c)(4). The court added that if Sherwood believed it lacked authority to continue the trial until April 26, he should file a C.A.R. 21 petition in our court to seek clarification. Though Sherwood didn't take the trial court up on its suggestion, the People did. They sought our intervention, arguing that, since the trial court failed to declare another mistrial on March 9, the speedy trial period was only tolled for eight days (between March 1 and March 9) and, therefore, the new trial date of April 26 fell outside the new speedy trial deadline, which they calculated as March 17 (the original speedy trial deadline of March 9 + 8 days).5 For the reasons we set forth next, we decided to exercise our original jurisdiction and issued a rule to show cause in response to the People's C.A.R. 21 petition.
II. Original Jurisdiction
¶13 C.A.R. 21(a)(1) vests our court with sole discretion to exercise our original jurisdiction. In exercising that discretion in the past, however, we have repeatedly recognized that C.A.R. 21(a)(1) is narrow in scope — it provides "an extraordinary remedy that is limited in both purpose and availability." Lucy, ¶ 11, 467 P.3d at 335 (quoting People v. Rosas, 2020 CO 22, ¶ 19, 459 P.3d 540, 545 ). Thus, we have exercised our original jurisdiction in limited circumstances, such as "when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, or when a petition raises issues of significant public importance that we have not yet considered." Id. (quoting Rosas, ¶ 19, 459 P.3d at 545 ).
¶14 The People advance three contentions in support of their position that this is an appropriate case for exercise of our original jurisdiction. We agree that all three grounds justify exercising our original jurisdiction. ¶15 First, if, as the People maintain, the speedy trial deadline was March 17, then the trial court would have lacked jurisdiction to try this case on April 26. See People v. DeGreat, 2020 CO 25, ¶ 8, 461 P.3d 11, 14. "Relief in the nature of prohibition under C.A.R. 21 is an appropriate remedy when a district court is proceeding without jurisdiction to try a defendant in violation of his right to a speedy trial." Id. (alteration omitted) (quoting Marquez v. Dist. Ct., 200 Colo. 55, 613 P.2d 1302, 1304 (1980) ).
¶16 Second, and again assuming the trial court erred in rescheduling the trial after March 17, dismissal of the case on direct appeal for a speedy trial violation would leave the People with no other adequate remedy. Sherwood could "not again be indicted, informed against, or committed for the same offense[s], or for another offense based upon the same act or series of acts arising out of the same criminal episode." § 18-1-405(1).
¶17 Third, we have never addressed the computation of the speedy trial deadline following a mistrial under Rule 24(c)(4). And, as the proceedings below illustrate, this can be a confusing undertaking. Moreover, we confront a question of statewide importance that is likely to recur. We are not out of the COVID-19 woods just yet, and many trial courts throughout the state continue to rely on Rule 24(c)(4) because they remain unable to safely assemble a fair jury pool in at least some cases set for trial on any given week—either because of the pandemic itself or because of limitations associated with it.
¶18 In short, our discretionary exercise of original jurisdiction in this case fits within the confines of C.A.R. 21(a)(1). We thus proceed to consider whether the April 26 trial date fell outside the speedy trial period. We momentarily interrupt our discussion, though, to articulate the governing standard of review.
III. Standard of Review ¶19 Whether the trial date scheduled in a case fails to honor the defendant's statutory right to speedy trial hinges on our interpretation of section 18-1-405. See People v. Nunez, 2021 CO 31, ¶ 16, 486 P.3d 1149. Our interpretation of section 18-1-405, in turn, is a question of law subject to de novo review. Id.
IV. Analysis
¶20 The People argue that the trial court incorrectly concluded that the mistrial extended the speedy trial deadline by three months from the mistrial date —until June 1. We agree. The mistrial merely tolled speedy trial for up to three months from the mistrial date, which is different. But we nevertheless reject the People's contention that the new speedy trial deadline was March 17 and that, therefore, the April 26 trial date fell outside the speedy trial period.
A. Relevant Legal Principles
¶21 The wellspring of the statutory right to speedy trial in Colorado is section 18-1-405. Lucy, ¶ 20, 467 P.3d at 336. Subsection (1) of that statute provides that if a defendant's case "is not brought to trial ... within six months from the date of the entry of a plea of not guilty, ... the pending charges shall be dismissed" and may not be refiled. ¶22 The statutory right to speedy trial derives from the federal and state constitutions — specifically, the Sixth Amendment to the U.S. Constitution and article II, section 16 of the Colorado Constitution. Moody v. Corsentino, 843 P.2d 1355, 1362 (Colo. 1993). The protection provided by the speedy trial statute "is meant to give effect to the constitutional right to a speedy trial." People v. McMurtry, 122 P.3d 237, 240 (Colo. 2005). "The statute does not create any additional rights." Id. at 241. Rather, it "must be regarded as having been enacted for the purpose of rendering the constitutional guarantee effective and providing a method of securing the right declared." Ex parte Schechtel, 103 Colo. 77, 82 P.2d 762, 764 (1938), overruled on other grounds by Watson v. People, 700 P.2d 544 (Colo. 1985). ¶23 Sherwood has no duty to bring his criminal charges to trial. See Lucy, ¶ 21, 467 P.3d at 336. The burden of compliance with the speedy trial requirement isn't on him; it rests wholly with the People and the trial court. DeGreat, ¶ 17, 461 P.3d at 15-16. The People and the trial court share responsibility for "ensuring that a case is brought within statutory speedy trial time limits." Id., 461 P.3d at 15 (quoting Hills v. Westminster Mun. Ct., 245 P.3d 947, 950 (Colo. 2011) ).
¶24 Last term, we spotlighted the difference between the extension provisions and the tolling provisions in the speedy trial statute. Lucy, ¶¶ 22-23, 467 P.3d at 337. Using subsection (3) of the statute as an example of an extension provision, we observed that when a defendant requests and receives a continuance of his trial, the six-month period in which he must be tried "is extended for an additional six-month period from the date upon which the continuance was granted." Id. at ¶ 22, 467 P.3d at 337 (quoting § 18-1-405(3) ). Then, referring to subsection (6) as "a first cousin" of subsection (3) and other extension provisions, we explained that, whereas the extension provisions "authorize the six-month speedy trial period ... to be extended," subsection (6) contains tolling provisions that identify "the 'periods of time' that must be excluded in computing the time within which a defendant must be brought to trial." Id. at ¶ 23, 467 P.3d at 337 (quoting § 18-1-405(6) ). ¶25 Subsection (6)(e) is a tolling provision. It directs that "[t]he period of delay caused by any mistrial, not to exceed three months for each mistrial," must be excluded from the computation of the speedy trial period. § 18-1-405(6)(e). ¶26 But not all delays caused by a mistrial are excludable from the speedy trial period. Our jurisprudence establishes that such delays qualify for exclusion only when they are "reasonable." People v. Pipkin, 655 P.2d 1360, 1361 (Colo. 1982). Thus, when a trial court declares a mistrial, including under Rule 24(c)(4), the only delays excludable from the computation of time within which a defendant must be brought to trial are those that are: (1) reasonable, (2) attributable to the mistrial, and (3) not in excess of three months. § 18-1-405(6)(e) ; Pipkin, 655 P.2d at 1361. The last of these conditions requires no further discussion, but the first two warrant brief elaboration.
¶27 We've cautioned against "an inappropriately narrow reading" of the statutory condition that the delay be attributable to the mistrial. Pipkin , 655 P.2d at 1362. Indeed, we've recognized that "all of the delay in obtaining a retrial" could, "[i]n a sense," be deemed to have been caused by the mistrial because, if a mistrial had not been declared, "the trial would have been completed on schedule." Id. at 1361. And, as it relates to the remaining condition—the one shepherded by our case law —we've instructed that the reasonableness of any delay "must be considered on its own facts," id ., though we've hastened to add that "docket congestion" is certainly a factor that may be considered as part of the inquiry, id. (quoting Pinelli v. Dist. Ct., 197 Colo. 555, 595 P.2d 225, 227 (1979) ).
¶28 Importantly, we've never endorsed a wooden or mechanistic application of subsection (6)(e). To the contrary, more than forty years ago, we rejected such an application of that subsection. See Pinelli, 595 P.2d at 226. In Pinelli, we disagreed with the Pinellis' contention that subsection (6)(e) excluded only "the actual time of the mistrial and a short period to allow the parties to resubpoena witnesses." Id. We determined instead that the entire delay between the mistrial and the new trial date set by the court after consulting its courtroom calendar was properly excluded from the speedy trial period. Id. at 226-27. We reasoned that a delay of about "two months" could not "be said to be unreasonable under the circumstances." Id. at 227.
¶29 With these precepts in mind, we're ready to turn back to this case.
B. Application
¶30 The trial court acknowledges that it was mistaken in believing that the mistrial triggered a three-month extension of the speedy trial period from the mistrial date. Instead, it recognizes that the speedy trial period was merely tolled for up to three months from the date of the mistrial. See § 18-1-405(6)(e). This distinction makes a difference in calculating the new speedy trial deadline: A three-month extension from the date of the mistrial results in a June 1 speedy trial deadline, but a tolling of up to three months from the date of the mistrial results in an earlier speedy trial deadline — either March 17, as the People urge, or May 4, as the trial court maintains. ¶31 We side with the trial court and conclude that May 4 became the new speedy trial deadline when the trial was postponed from March 9 until April 26. First, as the People admit, the one-week delay between March 1 and March 8 was both clearly attributable to the mistrial and unquestionably reasonable. Having declared a mistrial because of its inability to safely seat a fair jury as a result of COVID-19, the court set the case over until the very next trial week (March 8). ¶32 On March 8, the court continued the case again, this time for one day, because Sherwood failed to appear for trial in person. We agree with the People that this delay, too, was both attributable to the mistrial (even if indirectly so) and reasonable. Had the court been able to proceed to trial on March 1, there would have been no need for Sherwood to appear for trial on March 8. Additionally, for purposes of the six-month speedy trial period, the duration of this delay was the shortest delay possible.6 ¶33 According to the People, however, the postponement of the trial from March 9 until April 26 was not attributable to the circumstances that required a mistrial on March 1. We are unpersuaded.
¶34 The reason the court continued the trial on March 9 was precisely the reason it declared a mistrial on March 1: It could not safely assemble a fair jury pool because of COVID-19. Put differently, the circumstances that forced the court to declare a mistrial remained unchanged eight days later. The court had no more options on March 9 than it did on March 1. ¶35 Nevertheless, the People insist that the court's finding on March 9 was related to the unavailability of jurors and the inability to proceed to trial that day , not to the unavailability of jurors and the inability to proceed to trial on March 1. Therefore, claim the People, the tolling period triggered by the March 1 mistrial ended on March 9 and a new mistrial was necessary to avoid having the speedy trial period expire on March 17. This is just the type of rigid analysis we rejected in Pinelli. The speedy trial statute is " ‘not intended to be applied in a wooden or mechanistic fashion’ that would undermine the societal interest in effective enforcement of the criminal laws." People v. Martin, 732 P.2d 1210, 1214 (Colo. 1987) (quoting People v. Sanchez, 649 P.2d 1049, 1052 (Colo. 1982) ). ¶36 On March 9, the court made the same determination (almost verbatim) it made on March 1: Due to a public health crisis, it was unable to bring prospective jurors into the courtroom to safely seat a fair jury. We have little difficulty concluding that the postponement of the trial on March 1, on the one hand, and the postponement of the trial on March 9, on the other, were both part and parcel of the court's continuous efforts to safely assemble a fair jury pool notwithstanding COVID-19 and related limitations. That is to say, the same task undertaken on March 1 was taken up again on March 9. To be sure, the court could have declared another mistrial on March 9 —after all, Rule 24(c)(4) doesn't limit the number of times a mistrial may be declared. But the fact that the court could have declared a second mistrial on March 9 doesn't mean it was required to do so.7 ¶37 Still, the People suggest that the delay between March 9 and April 26 cannot be deemed reasonable because it wasn't expressly "categorized as a finding of ... docket congestion." However, we have never required such a finding to justify the reasonableness of a delay. Explaining, as we have, that docket congestion is a factor that may be considered vis-a-vis the reasonableness inquiry, Pinelli, 595 P.2d at 227, is not the same as pronouncing that only docket congestion delays can ever render a delay reasonable.
¶38 In any event, contrary to the People's view, the record suggests that docket congestion played a part in the April 26 trial setting. After the trial court judge found that, despite his best efforts, he could not safely seat a fair jury as a result of a public health crisis, he asked his clerk to consult the courtroom calendar and find a week when the court was available again for trial. The clerk did so and indicated that the court could preside over Sherwood's trial on April 26. The court then rescheduled the trial for April 26. This delay of seven weeks was similar to the delay that we ruled was reasonable in Pinelli. 595 P.2d at 227 (indicating that the delay of approximately two months following consultation of the courtroom calendar was reasonable). While "docket congestion" would not have justified a retrial "later than the three-month maximum period ..., it is a factor in determining the reasonableness of the delay within the statutory ... time periods of section 18-1-405(6)(e)." Id. (citation omitted).
¶39 Notably, separate and apart from docket congestion, the trial court judge was keenly aware of the status of the pandemic, which had caused back-to-back continuances of the trial. For the second time in eight days, his efforts to safely seat a fair jury had proven futile. He was clearly mindful of this reality in selecting April 26 as the new trial date. The People cite no authority — and our research has unearthed none — that required the judge to keep rescheduling the trial on a week-to-week basis until a fair jury could be safely selected. And there is no basis in the record to conclude that the judge's March 9 decision to attempt to safely select a fair jury seven weeks later was unreasonable.
¶40 Under all the circumstances present, we deem the delay in question reasonable. We are not persuaded otherwise by the People's argument that the delay between March 9 and April 26 cannot be considered reasonable because it wasn't caused by the mistrial. The People conflate the causation requirement with the reasonableness requirement. At any rate, we've already determined that the delay between March 9 and April 26 was caused by the mistrial. Thus, the purported lack of a causal link between the delay and the mistrial cannot serve as the basis for a finding of unreasonableness.
¶41 In sum, because the delay between March 1 and April 26 was less than three months in duration, attributable to the March 1 mistrial, and reasonable, its exclusion from the calculation of the new speedy trial deadline was required. Speedy trial was tolled (or on time-out) during that period. Since there were eight days left in the speedy trial period on March 1, there would have been eight days left in the speedy trial period on April 26, which means that May 4 would have been the new speedy trial deadline. As such, the April 26 trial date fell within the speedy trial period.
V. Conclusion
¶42 For the foregoing reasons, we conclude that, following the March 1 mistrial, the trial court reset the trial on a date that preceded the expiration of the speedy trial period. Accordingly, we discharge the rule and remand for further proceedings consistent with this opinion.
1 As pertinent here, Crim. P. 48 mirrors section 18-1-405. For the sake of convenience, we limit our discussion in this opinion to the statute.
2 Sherwood, who is represented by counsel, did not file a response brief in our court.
3 Throughout the proceedings, the court referred to ninety-one days, not three months. In its brief before us, however, it concedes that this was incorrect.
4 The transcript reflects that the court said May 31, not June 1, but three months from March 1 was June 1. Besides, May 31 was a holiday, Memorial Day.
5 The People incorrectly refer to March 16, rather than March 17, in their briefs. Their math is off. An eight-day tolling period would have made March 17 the new speedy trial deadline: March 9 (the original speedy trial deadline) + 8 days = March 17. Differently stated, since there were eight days left in the speedy trial period on March 1 (when the tolling commenced), there were also eight days left in the speedy trial period on March 9 (when, according to the People, the tolling ended).
6 Given our disposition of this original proceeding, we do not address the trial court's alternative argument that the speedy trial period was extended for an additional six months from March 9 by Sherwood's failure to appear in person on March 8. See § 18-1-405(3.5) (providing that if the defendant fails to appear in person on the trial date, the speedy trial period "is extended for an additional six-month period from the date of the defendant's next appearance").
7 We need not, and thus do not, reach the trial court's contention that its remarks on March 9 were tantamount to declaring a second mistrial.