23CA0432 Peo v Lynch 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0432
City and County of Denver District Court No. 19CR7335
Honorable Eric M. Johnson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Frank A. Lynch,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Kuhn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel Z. Geiman, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Frank A. Lynch, appeals the district court's judgment of conviction entered on jury verdicts finding him guilty of aggravated robbery, first degree burglary, second degree burglary, and two counts of theft. We conclude that Lynch's second degree burglary conviction merges into his first degree burglary conviction, vacate the second degree conviction and sentence, remand for appropriate correction of the mittimus, and affirm in all other respects.

## I.    Background

¶ 2    Shortly before 8 p.m. one evening, B.A. arrived for dance practice at a dance studio her dance team sometimes rented. After unlocking and opening the door, she was surprised to see that the studio's iPads were missing from their usual place at the front desk. And because B.A. expected to be the first to arrive, she was startled when she heard a toilet flush in the back corner of the studio. From out of that corner, a masked man "assertively" walked toward her and pointed a gun at her head. B.A. testified at trial that "he said if I didn't get on the ground, he was going to blow my fucking head off." She complied and got on the ground. B.A. heard shuffling noises near her and then heard the masked man walk

1

back toward the bathrooms in the back corner of the studio.  B.A. ran out of the studio and called 911 from a nearby liquor store.

¶ 3     Police officers arrested Lynch about twenty minutes later after he fled on foot from an unrelated traffic stop.  The officers found a gun in the front passenger seat of his vehicle along with a black mask with a white skull on it.  A detective recovered several iPads and B.A.'s wallet and driver's license from Lynch's vehicle.

¶ 4     The People charged Lynch with aggravated robbery, first degree burglary, second degree burglary, two counts of possession of a weapon by a previous offender, and six habitual criminal counts.  The prosecution dismissed the two counts of possession of a weapon by a previous offender before trial.  A jury found Lynch guilty on the remaining nonhabitual-criminal counts.

¶ 5     The district court held a separate bench trial on the habitual criminal counts and found Lynch guilty as charged.[1]  The court

---

[1] Lynch concedes that the United States Supreme Court's decision in *Erlinger v. United States*, 602 U.S. 821 (2024), holding that a jury must determine the existence of prior offenses if such a determination will increase the defendant's punishment, doesn't apply in this case.  *See People v. Crabtree*, 2024 CO 40M, ¶¶ 5-8 (holding that obviousness for purposes of plain error review is determined as of the time the error occurred).

sentenced Lynch to a controlling term of sixty-four years in the custody of the Colorado Department of Corrections.

## II. Discussion

¶ 6    Lynch contends that (1) all the convictions must be vacated because he was tried beyond the deadline set by the speedy trial statute, section 18-1-405, C.R.S. 2025; (2) his aggravated robbery conviction must be vacated because there was insufficient evidence to support that conviction; and (3) his second degree burglary conviction should merge into his first degree burglary conviction. We reject the first two contentions but agree with the third.

## A. Speedy Trial

¶ 7    Lynch first contends that the district court violated his statutory right to a speedy trial by erroneously (1) granting the prosecution's motion to continue the trial under section 18-1-405(6)(g)(I); (2) finding that his voluntary absence from the disposition hearing delayed the trial under section 18-1-405(6); and (3) finding that his trial counsel had requested a continuance of the trial under section 18-1-405(3). Because we conclude that the court didn't abuse its discretion by granting the prosecution's motion to continue under section 18-1-405(6)(g)(I), Lynch's trial

occurred within the statutory speedy trial deadline.  Therefore, we don't need to address his other speedy trial contentions.

## 1.    Applicable Law

¶ 8    "Colorado's speedy trial statute, section 18-1-405, is intended to implement a criminal defendant's constitutional right to a speedy trial and to prevent unnecessary prosecutorial and judicial delays in the prosecution of a criminal case."  *Mosley v. People*, 2017 CO 20, ¶ 17.  The statute requires dismissal of pending charges if a defendant isn't brought to trial within six months of the date he entered a not guilty plea unless the delay is justified by an express statutory exclusion.  *Id.*; *see* § 18-1-405(1), (6).

¶ 9    As relevant to this case, subsection (6)(g)(I) authorizes a court to grant the prosecution's request for a continuance without the defendant's consent if the prosecution shows that (1) evidence material to the prosecution's case is unavailable; (2) the prosecution exercised due diligence in attempting to obtain the evidence; and (3) it is reasonable to believe that the evidence will be available at a later date.  § 18-1-405(6)(g)(I).

¶ 10    The burden of complying with the statute lies with the district court and the prosecution.  *See People v. Lucy*, 2020 CO 68, ¶ 21.

To satisfy its burden, the court must make "a record sufficient for an appellate court to determine statutory compliance." *Id.* (quoting *Marquez v. Dist. Ct.*, 613 P.2d 1302, 1304 (Colo. 1980)). If the record is insufficient to establish the "statutory elements" of an exception, the "continuance cannot be excluded from the speedy trial computation." *Marquez*, 613 P.2d at 1304.

### 2. Standard of Review

¶ 11 We review a district court's grant of a continuance under subsection (6)(g)(I) for an abuse of discretion. *People v. Trujillo*, 2014 COA 72, ¶ 18. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or based on a misunderstanding or misapplication of the law. *People v. Knapp*, 2020 COA 107, ¶ 31. We won't disturb the court's decision if the record supports its findings relating to each element of subsection (6)(g)(I). *See Trujillo*, ¶ 18.

### 3. Additional Background

¶ 12 Lynch pleaded not guilty on March 21, 2022. The district court determined that the speedy trial deadline was therefore October 25, 2022. (Lynch doesn't dispute this calculation.) The

trial was initially set to begin on Tuesday, September 27, 2022.[2]

But scheduling conflicts delayed Lynch's trial's start date. On

September 22, the district court issued an order rescheduling the

start of the trial to Monday, September 26. At a status conference

that same day, Lynch's attorney told the court that he couldn't

begin the trial on Monday because he had many other cases set on

that day and wouldn't be able to get anyone to cover those cases for

him. The parties agreed to an October 4 start date, expressly

conditioned on the availability of the prosecution's witnesses.

¶ 13    On September 27, the prosecution filed a motion to continue

the trial after serving two witnesses with subpoenas and learning

that they weren't available on October 4. Those two witnesses were

Detective Moses Rodriquez Jr., the Denver Police Department

detective who had searched Lynch's car and found the stolen items

belonging to B.A. and the studio, and Matthew Desaro, the Bureau

of Alcohol, Tobacco, Firearms, and Explosives expert witness who

had tested the firearm found in Lynch's car and swabbed it for

DNA. The prosecution represented that both witnesses were

---

[2] All dates relevant to this issue were in 2022.

essential, would be out of state on October 4 because of previously scheduled vacations, and would be available to testify at a later trial date.

¶ 14     At a hearing on the motion, the prosecutor noted that the witnesses had received only twelve days' notice of the rescheduled October 4 trial date. Detective Rodriquez "organized and investigated the entire case between jurisdictions," and he "had a predetermined out of the country . . . or out of state trip." And "Mr. [Desaro] in terms of swabbing for DNA on the firearm, and test firing the firearm, also had preexisting obligations that he could not modify." The prosecutor represented that "[t]hese were the people who simply could not move what they had in order to come to court on such short notice."

¶ 15     Lynch's counsel objected to the continuance, arguing that the prosecutors "could have checked, using the most minute amount of diligence, to see if [October 4] was a date that their Denver witnesses could accept."

¶ 16     The court accepted the prosecution's representations and granted the motion. The parties then agreed to begin the trial on December 13. The trial indeed began on December 13.

## 4.    Analysis

¶ 17    The record supports the district court's decision under subsection (6)(g)(I).  The prosecution represented that Detective Rodriquez and Mr. Desaro were necessary witnesses because Detective Rodriquez had found items in Lynch's car tying him to the burglary and had coordinated with officers across multiple jurisdictions and Desaro could help establish the chain of custody for Lynch's gun.  They were therefore material witnesses, as Lynch concedes.  Nor does Lynch contest that these witnesses were available to testify at a later date.

¶ 18    Lynch challenges the court's decision on the sole basis that the prosecution didn't exercise due diligence.  He asserts that the prosecution didn't find out "[u]pfront" whether these witnesses were available on October 4 and that the prosecution "never explained why the witnesses couldn't skip or reschedule their vacations" or "make any record that they attempted to get the witnesses to show up anyway."

¶ 19    The record shows that immediately after the trial was conditionally reset to begin on October 4 (which was done on the fly at the September 22 status hearing), the prosecution subpoenaed

the two witnesses and subsequently learned from them that they weren't available on that day. The prosecution immediately moved for a continuance. Lynch doesn't cite any authority for the proposition that the prosecution's obligation of due diligence requires it to interfere with a witness's vacation plans or to enforce a subpoena for the witness to attend trial on a day that the witness plans to be out of the state, and we aren't aware of any. We therefore conclude that the district court didn't abuse its discretion by finding that the prosecution exercised due diligence. *See Vigil v. People*, 2019 CO 105, ¶ 14 ("In determining whether a trial court has abused its discretion, reviewing courts . . . must affirm as long as the trial court's decision fell within a range of reasonable options.").[3]

¶ 20     Because the only delay that resulted in the trial starting beyond the original speedy trial deadline of October 25 was the delay caused by the unavailability of two witnesses, the court didn't

---

[3] This case is distinguishable from *People v. Lucy*, 2020 CO 68, and *Sweet v. Myers*, 612 P.2d 75 (Colo. 1980), on which Lynch relies, because in this case the prosecution made a sufficient record of its efforts to procure the witnesses for trial and of the witnesses' unavailability.

abuse its discretion by granting a continuance under subsection (6)(g)(I), and because the delay was less than six months, we don't need to address Lynch's arguments about the effects of his unexcused absence from a pretrial hearing or his counsel's unavailability on September 26. *See* § 18-1-405(6)(g) (the period of delay from causes covered by subsection (6)(g) may not exceed six months).

### B. Sufficiency of the Evidence

¶ 21    Lynch next contends that the evidence presented to the jury was insufficient to prove beyond a reasonable doubt that he committed aggravated robbery. *See* § 18-4-302(1)(b), C.R.S. 2025. Specifically, he contends that there was no evidence that B.A. was "in reasonable fear of death or bodily injury." We don't agree.

### 1. Applicable Law

¶ 22    A person commits aggravated robbery, as relevant in this case, "if during the act of robbery or immediate flight therefrom . . . by the use of force, threats, or intimidation with a deadly weapon [he]

knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury." § 18-4-302(1)(b).[4]

> The essential difference between simple robbery and that form of aggravated robbery requiring the culpability element of "knowingly" is that the latter offense requires the defendant to "knowingly" put the person robbed or any other person in reasonable fear of death or bodily injury by the use of force, threats or intimidation with a deadly weapon.

*People v. Aragon*, 653 P.2d 715, 720 (Colo. 1982). But "[t]he prosecution need only prove the defendant was aware that his or her conduct was practically certain to cause fear." *People v. Margerum*, 2018 COA 52, ¶ 56 (quoting *People v. Shawn*, 107 P.3d 1033, 1035 (Colo. App. 2004)), *aff'd on other grounds*, 2019 CO 100. "The defendant's subjective awareness may be inferred from his conduct and the surrounding circumstances; direct evidence need not be presented." *Id.*

¶ 23    "In determining whether the defendant knowingly placed another person in fear of imminent serious bodily injury, the proper focus is on the defendant's intent, not the victim's perception or

---

[4] Lynch doesn't attack the sufficiency of evidence for simple robbery under section 18-4-301, C.R.S. 2025, which the jury was instructed on as a lesser included offense of aggravated robbery.

reaction." *Id.* Nevertheless, "[w]hat the victim saw or heard, and how the victim reacted, are relevant considerations in determining whether [the] defendant had the requisite intent to place the victim in fear." *People v. Lopez*, 2015 COA 45, ¶ 8 (quoting *People v. Manzanares*, 942 P.2d 1235, 1239 (Colo. App. 1996)).

## 2.  Standard of Review

¶ 24    In evaluating the sufficiency of the evidence, "we ask whether the evidence, 'viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'" *Gorostieta v. People*, 2022 CO 41, ¶ 16 (quoting *People v. Harrison*, 2020 CO 57, ¶ 32). We defer to the jury's assessments of witness credibility and conflicting evidence. *Montoya v. People*, 2017 CO 40, ¶ 19. And we give the prosecution the benefit of every inference that may reasonably be drawn from the evidence. *People v. Perez*, 2016 CO 12, ¶ 25.

## 3.  Analysis

¶ 25    B.A. testified that Lynch "assertively" walked up to her, pointed a gun at her head from a few inches away, told her to get on the ground, and said that if she didn't get on the ground, he was

12

going to "blow [her] fucking head off." B.A. also said that his voice sounded "very loud and very angry."

¶ 26 Viewing the evidence as a whole and in the light most favorable to the prosecution, we conclude that a reasonable juror could infer that Lynch knew his actions were practically certain to cause B.A. fear. *See People v. Robinson*, 226 P.3d 1145, 1154 (Colo. App. 2009) ("In assessing the sufficiency of the evidence, . . . a defendant's mental state may be inferred from his or her conduct and other evidence, including the circumstances surrounding the commission of the crime . . . .").

¶ 27 *Bowers v. People*, 617 P.2d 560 (Colo. 1980), *superseded by statute on other grounds*, Ch. 212, sec. 2, § 18-1-901(3)(e), 1981 Colo. Sess. Laws 972, on which Lynch relies, doesn't require a contrary conclusion. In *Bowers*, the supreme court said, "We construe the [aggravated robbery] statute to require that the person placed in fear must fear his own death or bodily injury, and that the fear must be based in some part upon the presence of a deadly weapon." *Id.* at 564. Viewed in context, we read this language as clarifying that the person placed in fear must be the named victim, not someone else, and that the named victim's fear must be based

13

on the defendant's use of a weapon in a way that would reasonably have placed the named victim in fear.

¶ 28 But even if the statute required evidence that B.A. actually was placed in reasonable fear by Lynch's actions (that is, that B.A. actually feared that Lynch was going to harm her), we conclude that a reasonable juror could infer that she was. After all, she testified that Lynch pointed a gun at her head and said he would blow her head off if she didn't get on the ground. And she testified, "I was mostly very surprised, and so I didn't respond right away. I like stood there, and I stared at him until he was very close, and then I sat on the ground." She said she "crouched on the ground, and I put my head down." When B.A. fled, running in the direction opposite where she thought Lynch was, she immediately called 911. She was clearly flustered when she spoke with the 911 responder. And responding police officers described her as "scared, flustered, just adrenaline a little bit high" and "more in shock of what had just occurred." That B.A. may have remained relatively calm doesn't show that she wasn't in fear of what Lynch might do to her.

## C.     Burglary Count Merger

¶ 29     Lastly, Lynch contends that we must merge his second degree burglary conviction with his first degree burglary conviction.  The People don't dispute that second degree burglary may be a lesser included offense of first degree burglary but contend that, because the burglary counts named different victims (the studio and B.A.), we should affirm.  We agree with Lynch that the second degree burglary conviction must merge.

### 1.     Applicable Law

¶ 30     "The state and federal constitutions prohibit placing someone in jeopardy twice for the same offense."  *Whiteaker v. People*, 2024 CO 25, ¶ 10 (first citing U.S. Const. amends. V, XIV; and then citing Colo. Const. art. II, § 18).  "Constitutional double-jeopardy protections preclude the imposition of multiple punishments when the General Assembly has not 'conferred specific authorization for multiple punishments.'"  *Page v. People*, 2017 CO 88, ¶ 8 (quoting *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005)).  The General Assembly "has determined a defendant may not be convicted of two offenses for the same conduct if the lesser offense is included in the

greater." *Id.* at ¶ 9. Such multiplicitous convictions violate double jeopardy principles. *Whiteaker*, ¶ 10.

### 2. Standard of Review

¶ 31    "Whether two convictions must merge is a question of law that we review de novo." *Thomas v. People*, 2021 CO 84, ¶ 19. If we conclude the district court erred by failing to merge multiplicitous convictions, merger is the required remedy. *Whiteaker*, ¶¶ 23-24.

### 3. Analysis

¶ 32    The People charged Lynch with first degree burglary naming B.A. as the victim under section 18-4-202(1), C.R.S. 2025, which provides, in relevant part, that

> [a] person commits first degree burglary if the person knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime . . . against another person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, the person or another participant in the crime assaults or menaces any person.

¶ 33    The People also charged him with second degree burglary naming the studio as the victim under section 18-4-203(1), C.R.S. 2025, which provides that "[a] person commits second degree

16

burglary, if the person knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property."

¶ 34    Second degree burglary is a lesser included offense of first degree burglary. *Lucero v. People*, 2012 CO 7, ¶ 29 (citing *Armintrout v. People*, 864 P.2d 576, 582 (Colo. 1993)), *superseded by statute on other grounds*, Ch. 244, sec. 2, § 18-4-401(4)(a), 2009 Colo. Sess. Laws 1099-1100.  However, the People contend that because there were two victims — B.A. and the studio — the separate convictions should stand.

¶ 35    As both Lynch and the People note, a division of this court has ruled on this issue before.  In *People v. Fuentes*, 258 P.3d 320 (Colo. App. 2011), the division held that a single entry into a building doesn't support separate convictions if more than one person was in the building, even if they were both assaulted.  *Id.* at 323-25.  It reasoned that because Colorado's first degree burglary statute doesn't emphasize the assaultive element over the trespass element, the gravamen of burglary offenses is the unlawful entry.  *Id.* at 325.

¶ 36    We aren't persuaded to depart from *Fuentes* by the People's argument that the division in *Fuentes* ignored the statutory language. The division's review of the statutory language, common law burglary, and analogous statutes in other jurisdictions remains persuasive. The General Assembly's language criminalizes the knowing entry to a building or occupied structure with the intent to commit a crime against a person or property. Thus, Lynch can't be convicted of unlawfully entering the studio with an intent to menace B.A. and also be convicted of the same unlawful entry with the intent to commit theft against the studio. *See People v. Carter*, 2015 COA 24M-2, ¶¶ 76-77 (following *Fuentes* and rejecting the People's argument that multiple victims of menacing inside the building justified multiple convictions for first degree burglary).

¶ 37    Nor are we moved by the People's argument that because B.A. had no possessory interest in the studio's iPads and other property and the studio had no possessory interest in B.A.'s belongings, there were "distinct injuries" supporting multiple convictions. As we have already noted, the unlawful entry is the gravamen of the crime, and there was only one unlawful entry. *See Fuentes*, 258 P.3d at 325.

¶ 38     It follows that Lynch's conviction for second degree burglary merges into his conviction for first degree burglary.  *See Whiteaker*, ¶ 24 ("[W]hen a defendant establishes that a trial court entered multiplicitous punishments in violation of double jeopardy principles, merger is the remedy.").[5]

### III.   Disposition

¶ 39     We vacate Lynch's second degree burglary conviction and merge it into his first degree burglary conviction.  On remand, the district court must amend the mittimus to reflect the merger.  In all other respects, the judgment is affirmed.

JUDGE KUHN and JUDGE MOULTRIE concur.

---

[5] The People seemingly urge us to review this issue under ordinary plain error principles and affirm because any error wasn't obvious. But the Colorado Supreme Court expressly rejected that approach in *Whiteaker v. People*, 2024 CO 25, ¶¶ 23-24.