### The PEOPLE of the State of Colorado, Petitioner,

v.

### Jamie Lee GILLETT, Regina Maye Denolf, and Kenneth Phillip Ross, Respondents.

### No. 80SC146.

Supreme Court of Colorado.

June 8, 1981.

Robert R. Gallagher, Jr., Dist. Atty., James C. Sell, Chief Deputy Dist. Atty., Catherine P. Richardson, Deputy Dist. Atty., Littleton, for petitioner.

James J. Scott, Aurora, for respondents.

QUINN, Justice.

We granted certiorari to review the decision of the district court of Arapahoe County affirming the county court's dismissal of charges of driving under the influence of intoxicating liquor, section 42–4–1202(1)(a), C.R.S.1973, separately brought against three defendants. In each case the county court found that the arresting officer advised the defendant of his or her rights under the implied consent law, section 42–4–1202(3), C.R.S.1973, and requested the defendant to submit to chemical testing, but when the defendant then requested a blood test the officer did not comply with that request. The county court concluded that the actions of the arresting officers violated due process of law. The district court affirmed the order of dismissal but on a more narrow basis. It held that the implied consent law grants the arrested driver a statutory right to a blood test once the arresting officer invokes the law by requesting the driver to undergo chemical testing. We affirm the judgment of the district court.

### I.

The defendants were arrested by officers of the Aurora Police Department on separate dates (Gillett on August 23, 1978; DeNolf on October 27, 1978; and Ross on November 21, 1978) for driving under the influence of intoxicating liquor. Pursuant

to section 42–4–1202(3)(b), C.R.S.1973, the defendants were advised of their rights and of the probable consequences of a refusal to consent to a chemical test for the purpose of determining the alcoholic content of their blood. In response to the arresting officer's request for a test, each defendant asked for a blood test in accordance with the advisement previously given. The arresting officers told the defendants that facilities were not available for a blood test and no tests of any type would be given.[1] Because the defendants had consented to chemical testing the officers also told them that no administrative action would be initiated to revoke their licenses at that time.

Charges of driving under the influence were filed against the respective defendants.[2] Each defendant thereafter filed motions to dismiss which were consolidated for hearing before the county court. Admitted into evidence during the hearing was a letter dated April 24, 1978, from the Chief Deputy District Attorney for the Eighteenth Judicial District to various law enforcement agencies within the district, including the Aurora Police Department, which stated as follows:

"On April 21, 1978 a meeting was held among Aurora Community Hospital personnel, Aurora Presbyterian Hospital personnel, and the 18th Judicial District Attorney's Office personnel concerning the drawing of blood alcohols. Aurora Presbyterian and Aurora Community have indicated that as of May 10, 1978 they will not draw blood alcohols in *non-injury* situations. It is our further understanding that Swedish Hospital will continue to draw blood alcohols in both injury and non-injury situations. Aurora Community and Aurora Presbyterian have agreed to draw blood alcohols in an *injury* situation when possible.

"Law enforcement agencies should be aware of this change in policy and make appropriate arrangements either through a private nurse or physician or a hospital other than Aurora Community or Aurora Presbyterian to draw non-injury blood alcohols."

The county court concluded that the actions of the Aurora police officers were so unfair as to deny the defendants due process of law and granted the motions to dismiss. In a consolidated appeal to the district court it affirmed the order of dismissal on non-constitutional grounds, specifically concluding that "under the circumstances disclosed by the record each of the [d]efendants had a statutory right to be administered a blood test for the purpose of determining their blood alcohol content."[3]

## II.

We first address the question whether the district court correctly held that under the circumstances of this case the defendants had a statutory right to a blood test. Although the federal constitution does not prohibit the states from requiring a driver to submit to chemical testing of his blood shortly after a valid arrest, *see, e. g., Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *People v.*

---

1. In the county court hearing on the defendants' motions to dismiss it was stipulated that the arresting officers, after advising DeNolf and Ross of their rights and liabilities under the implied consent law, requested them to submit to a chemical test of their breath but the defendants thereupon requested a blood test.

2. Each defendant was charged with other traffic offenses in addition to the charge of driving under the influence. These other charges were not dismissed by the county court, were not involved in the appeal to the district court, and are not before us at this time.

3. The district court's rationale for affirming the dismissal order was as follows:

"The arresting officer is given the option of invoking the law in the first instance. Once the law is invoked on behalf of the People, the rights of the Defendant arise including the right to request and be administered a blood test. It is self evident that the People cannot deny the Defendant the rights to which he is entitled under a statute and at the same time prosecute him under the same legislative authority. To allow this would be to extend to the police the option of determining which provisions of the law or statute they wish to adhere to and to receive the benefit from and the option of determining which provisions of that same law they wish to avoid as burdensome."

*Duemig*, Colo., 620 P.2d 240 (1980); *People v. Sanchez*, 173 Colo. 188, 476 P.2d 980 (1970), the states "have elected to give drivers the option of refusing the test in order to avoid the potential for police abuse that might accompany physical compulsion." Note, *Driving While Intoxicated and the Right to Counsel: The Case Against Implied Consent*, 58 *Tex.L.Rev.* 935, 936–37 (1980). The statutes encourage submission by exacting a license revocation as the sanction for refusal. Some statutes grant the person arrested the right to choose one type of testing from several alternatives,[4] while others authorize the arresting officer to select the test.[5]

Colorado's implied consent law, section 42–4–1202(3), C.R.S.1973, provides in pertinent part as follows:

"(a) Any person who drives any motor vehicle upon a public highway in this state shall be deemed to have given his consent to a chemical test of his breath, blood, or urine for the purpose of determining the alcoholic content of his blood, if arrested for any misdemeanor offense arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of, or impaired by, alcohol. If such person requests that the said chemical test be a blood test, then the test shall be of his blood; but, if such person requests that a specimen of his blood not be drawn, then a specimen of his breath or urine shall be obtained and tested, the election to be made by the arresting officer.

"(b) The test shall be administered at the direction of the arresting officer having reasonable grounds to believe the person to have been driving a motor vehicle while under the influence of, or impaired by, alcohol and in accordance with rules and regulations prescribed by the state board of health, with utmost respect for the constitutional rights, dignity of person, and health of the person being tested. No person except a physician, a registered nurse, or a person whose normal duties include withdrawing blood samples under the supervision of a physician or registered nurse shall be entitled to withdraw blood for the purpose of determining the alcoholic content therein. At the time of making such request, the officer, orally and by written notice (which written notice shall be in both English and Spanish and signed by said officer), shall inform the person arrested of his rights under the law and the probable consequences of a refusal to submit to such a test. Such notice shall also state the circumstances on which he relies as reasonable grounds for believing the arrested person was under the influence of alcohol.

\*     \*     \*     \*     \*     \*

"(c) If any person who has been so arrested refuses to submit to a chemical test when requested by the arresting officer, as provided in this subsection (3), the test shall not be given."

Upon the driver's refusal to submit to chemical testing, the arresting officer is authorized to file a report of the refusal with the department of revenue. Section 42–4–1202(3)(e), C.R.S.1973 (1980 Supp.). If it is thereafter determined at an administrative hearing that the officer had reason-

---

4. *Cal.Veh.Code* § 13353(a) (1980 Supp.) ("The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, and he shall be advised by the officer that he has such a choice."); *Me.Rev.Stat.Ann.* Tit. 29, § 1312 (1980 Supp.) ([The person arrested] shall be informed by a law enforcement officer of the tests available to him [blood or breath], and said accused shall select and designate one of the tests.") *See generally* 2 *R. Erwin, Defense of Drunk Driving Cases* § 33.05 at 33–39 to 33–44 (3d ed. 1980).

5. *Ala.Code* § 32–5–192 ("The law-enforcement agency by which such officer is employed shall designate which of the aforesaid tests [blood, breath or urine] shall be administered."); *Ariz. Rev.Stat.Ann.* § 28–691 A ("The law enforcement agency which such officer represents shall designate which of such tests [blood, breath or urine] shall be administered, however only the breath test shall be administered in all cases except where circumstances preclude its use.") *See generally* 2 *R. Erwin, Defense of Drunk Driving Cases* § 33.05 at 33–44 to 33–46 (3d ed. 1980).

able cause to believe the arrested person was driving under the influence of or was impaired by alcohol and such person fails to establish good cause for refusing the chemical test, the department shall forthwith revoke his license. *Id.*[6] As an adjunct to these chemical testing provisions section 42–4–1202(2), C.R.S.1973, establishes a series of evidentiary presumptions of intoxication or impairment based on "the amount of alcohol in the defendant's blood at the time of the commission of the alleged offense or within a reasonable time thereafter, as shown by chemical analysis of the defendant's blood, urine, or breath...."[7]

The People argue that the overriding object of the implied consent law is to permit the more effective prosecution of vehicular offenses by the drinking driver and, therefore, granting the driver the right to a blood test upon invocation of the statute by the arresting officer is inconsistent with that purpose. This argument is untenable. The explicit terms of the implied consent law evince a clear legislative intent to create mutual rights and responsibilities for both the arresting officer and the arrested driver in connection with chemical testing of the alcoholic content of the driver's blood.

■ The arresting officer, in the first instance, has the right to invoke the implied consent law by requesting the driver to

submit to a chemical test or face revocation of his license. Alternatively, the officer may arrest the driver without invoking the statute and the prosecution thereafter may attempt to establish intoxication by means other than the statutory presumptions. The implied consent law neither requires the arresting officer to request a chemical test nor does it grant the driver an independent right to a test in the absence of the arresting officer's invocation of the statute. *People v. Culp*, 189 Colo. 76, 537 P.2d 746 (1975); *accord, People v. Hedrick*, 192 Colo. 37, 557 P.2d 378 (1976). While the driver may refuse a blood test with impunity, he cannot refuse the officer's request for a breath or urine test without jeopardizing his license. "By statute, the choice between a breath or urine test [is] the officer's to make." *Davis v. Colorado Department of Revenue*, Colo., 623 P.2d 874, 877 (1981). Administration of the test in accordance with the statutory requirements confers on the state the benefits of the statutory presumptions in any subsequent prosecution of the driver.

■ The implied consent law also accords the driver various rights, the most important for this case being the right to request and receive a blood test upon the arresting officer's initiation of the statutory chemical testing procedures.[8] Extraction of blood,

6. Under section 42–4–1202(3)(e), C.R.S.1973 (1980 Supp.), good cause includes "evidence that [the driver's] physical condition was such that, according to competent medical advice, such test would have been inadvisable or that the administration of the test would not have been in conformity with the rules and regulations of the state board of health...."

7. Section 42–4–1202(2), C.R.S.1973, which was applicable on the date of these offenses, provided as follows:

"(a) If there was at such time 0.05 percent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor and that his ability to operate a vehicle was not impaired by the consumption of alcohol.

"(b) If there was at such time in excess of 0.05 percent but less than 0.10 percent by weight of alcohol in the defendant's blood, such fact shall give rise to the presumption

that the defendant's ability to operate a vehicle was impaired by the consumption of alcohol, and such fact may also be considered with other competent evidence in determining whether or not the defendant was under the influence of alcohol.

"(c) If there was at such time 0.10 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of alcohol."

This section was amended in 1979 by adding "per volume" after "by weight of alcohol." Colo.Sess.Laws 1979, ch. 414, 42–4–1202(2) at 1579.

8. Other rights of the driver include oral and written notice of "his rights under the law and the probable consequences of refusal to submit" to a test, section 42–4–1202(3)(b), C.R.S. 1973; the right to refuse chemical testing, section 42–4–1202(3)(c), C.R.S.1973; the right to receive, upon request, the result of the test,

although somewhat more intrusive than a breath or urine test, has been recognized as a highly effective means of establishing the degree to which a person is under the influence of or impaired by alcohol. *Schmerber v. California*, 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. A blood test avoids the intermediate process of extrapolating a blood alcohol value from some other body substance, such as breath or urine. Thus, testing of the blood itself can provide the driver with a precise record of the alcoholic content of his blood should he elect to demonstrate that he was below the statutory presumption of impairment or intoxication. *See* 1 *R. Erwin, Defense of Drunk Driving Cases* at 17–2 (3d ed. 1980). Granting the driver the exclusive choice to request and receive a blood test upon the arresting officer's invocation of the implied consent law is a matter within the exclusive province of the legislature.

■ We construe section 42–4–1202(3), C.R.S.1973, to require that when an arresting officer invokes the sanctions of the implied consent law by requesting the driver to submit to chemical testing, the officer has a corresponding duty to comply with the driver's request for a blood test. Such construction is consistent with the legislative intent to create mutual rights and responsibilities for the arresting officer and the arrested driver and achieves a just and reasonable result feasible of execution. Section 2–4–201(1)(c) and (d), C.R.S.1973 (1980 Repl. Vol. 1B).

We need not decide in this case whether there might be exceptional circumstances which amount in law to good cause for an arresting officer's noncompliance with a driver's request for a blood test after the officer has requested the driver to submit to chemical testing.[9] In this case there was

no evidence of good cause for denying the defendants' requests for blood tests. The Aurora Police Department had been placed on notice by the district attorney to make arrangements for the withdrawal and testing of blood in drunk driving cases as early as four to seven months preceding the arrests of these defendants. The only permissible inference from this record is that the denial of the defendants' requests was the result of a departmental decision to forego the use of blood testing in drunk driving cases, not withstanding the provisions of section 42–4–1202(3)(a) granting the arrested driver the right to request and receive a blood test. The defendants having been denied their statutory right to a blood test, the only remaining question relates to the propriety of the dismissal order.

### III.

The People argue that the implied consent law contains appropriate sanctions for the denial of a driver's request for a blood test and, therefore, the county court abused its discretion in dismissing the charges. The statutory scheme, they claim, prohibits the arresting officer, once he has denied a driver's request for a blood test, thereafter from requesting a breath or urine test and this prohibition in turn deprives the prosecution of the statutory presumptions relating to impairment and intoxication. We find this argument unpersuasive.

■ Although in *People v. Culp*, 189 Colo. at 78, 537 P.2d at 748, we stated that "[c]hemical tests are neither necessary nor required to prove intoxication," we did not thereby imply that the state may disregard the statutory rights of the drivers with impunity. What the People overlook is that blood testing can establish innocence as well as guilt. *Breithaupt v. Abram*, 352 U.S.

section 42–4–1202(3)(g), C.R.S.1973; the right to exclude from a criminal prosecution under section 42–4–1202(1) the refusal to submit to a test, section 42–4–1202(3)(h), C.R.S.1973.

**9.** Good cause generally means a substantial reason amounting in law to a legal excuse for failing to perform an act required by law. *See, e. g., Tucker v. People*, 136 Colo. 581, 586, 319 P.2d 983, 986 (1957). Good cause for noncompliance with the driver's request for a blood test under section 42–4–1202(3)(a), C.R.S.1973,

might include those circumstances which, for reasons beyond the control of the enforcement authority, preclude the timely withdrawal and testing of blood by a qualified person and in accordance with the rules and regulations of the state board of health, as required by section 42–4–1202(3)(b), C.R.S.1973. The implied consent law is silent on this matter and, while mentioning the issue in passing, we express no opinion on it at this time.

432, 439, 77 S.Ct. 408, 412, 1 L.Ed.2d 448, 453 (1957). The statutory presumptions, in other words, run both ways. When the arresting officer initially invokes the implied consent law and thereafter denies the driver's request for a blood test, the driver is deprived of his right to establish non-intoxication by a highly reliable form of chemical testing. It was the denial of this right by the arresting officers, not the defendants' failure to seek alternative testing,[10] that constitutes the core of this controversy and the basis for the trial court's order of dismissal.

Considering that the Aurora police officers invoked the sanctions of the implied consent law against these defendants as a matter of course, and apparently did so against other arrested drivers,[11] the failure of the police department to have taken routine steps in order to implement the arrested driver's right to a blood test under the statute is analogous to the suppression of evidence. *See Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924 (1979). Trial courts retain broad discretionary authority to prevent manifest unfairness in governmental procedures relating to the acquisition and preservation of evidence potentially favorable to an accused. *E. g., People v. Morgan*, Colo., 606 P.2d 1296 (1980) (failure of police to preserve severed fingertip found at scene of homicide justified trial court's suppression of all evidence relating to the fingertip); *People v. Garcia, supra* (failure of police to collect and preserve breath samples in testing alcohol content of defendant's breath requires new trial); *People v. Poole*, 192 Colo. 56, 555 P.2d 980 (1976) (police officer's disregard of *subpoena duces tecum* requiring him not to shave beard resulted in loss of crucial defense evidence

and justified trial court's dismissal of felony charges); *People v. Harmes*, 38 Colo.App. 378, 560 P.2d 470 (1976) (negligent destruction by police of videotape of altercation between defendant and police entitled defendant to dismissal of second degree assault charge). The court's dismissal of the driving under the influence charges pending against these defendants was not an unreasonable exercise of its discretion in fashioning an appropriate remedy to correct the improper governmental conduct in relation to the implementation of the implied consent statute.

We affirm the judgment of the district court.

---

10. The People argue that if the defendants believed they were not intoxicated, they should have requested either a breath or urine test or a blood test from their own physician. This argument assumes that if the arresting officer after invoking the implied consent law refuses the driver's request for a blood test, the driver then has some duty to seek chemical testing by breath or urine. The implied consent law imposes no such duty on the driver. Second, the argument assumes that the arrested driver has a statutory right to an independent blood test

by his own physician. Several states expressly provide for an independent chemical test by a qualified person of the driver's choosing. *Traffic Laws Annot.* § 11.902.1(a)(3) at 632 (1972). There is no such provision in Colorado's implied consent law and we express no opinion on this issue at this time.

11. The record of the hearing before the county court discloses that the court previously had entered an order of dismissal in another case involving the same issues raised here.