**The PEOPLE of the State of Colorado, Petitioner,**

v.

**James SHINAUT, Respondent.**

**No. 96SC296.**

Supreme Court of Colorado,
En Banc.

June 30, 1997.

James J. Peters, District Attorney, Eighteenth Judicial District, James C. Sell, Chief Deputy District Attorney, District Court Division 6 John Topolnicki, Chief Deputy District Attorney, Civil Appellate and Forfeitures Division Englewood, for Petitioner.

Combs & Miner, P.C., Juliet F. Miner, Castle Rock, The Law Offices of Lawrence A. Wright, Jr., Lawrence A. Wright, Jr., Myka M. Landry, Joel C. Johnson, Kiowa, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

This appeal,[1] brought pursuant to C.A.R. 49, arises out of the county court's suppres-

sion of James Shinaut's (Shinaut) blood test results for non-compliance by a Colorado State Trooper with the provisions of section 42-4-1202(3)(a)(II), 17 C.R.S. (1993) (the express consent law).[2] The officer allowed Shinaut to change his election from a breath test to a blood test. Both the county court and the district court ruled that the express consent law specifically prohibits a change in the selected test. We agree that the statute is mandatory; but, the blood test results were improperly suppressed because Shinaut did not suffer any constitutional deprivation that would justify suppression of the evidence as a sanction.

Accordingly, we affirm that part of the district court's order ruling that a driver's test selection is irrevocable, but we reverse the ruling of the district court that suppressed Shinaut's blood test results.

## I.

On the evening of April 25, 1992, Colorado State Trooper C.D. Blanscet (Blanscet) observed Shinaut's vehicle weaving across the roadway lines while traveling northbound on Highway 85. Upon contacting Shinaut, Blanscet detected the odor of alcoholic beverage on Shinaut's breath and observed Shinaut's bloodshot and watery eyes.

Blanscet requested that Shinaut perform roadside sobriety tests. Shinaut failed these tests and Blanscet placed him under arrest for suspicion of driving while under the influence, § 42-4-1202(1)(a), 17 C.R.S. (1993) (now codified at § 42-4-1301(1)(a), 17 C.R.S. (1996 Supp.)), and failure to remain in a single lane, § 42-4-907(1)(a), 17 C.R.S. (1993) (now codified at § 42-4-1007(1)(a), 17 C.R.S. (1996 Supp.)).

Blanscet then provided Shinaut with the option of taking a blood test or a breath test pursuant to the express consent law. Shinaut elected to take a breath test, and Blanscet transported him to the Chatfield Parks and Recreation Office. However, upon arrival at the Parks and Recreation Office, Shinaut asked to take the blood test rather than the breath test. Blanscet then drove Shinaut to the Douglas County Sheriff's Office in Castle Rock, Colorado, where a paramedic administered the blood test that revealed a blood alcohol content of .092.

After a mistrial for prosecutorial misconduct,[3] the county court considered Shinaut's motion to suppress the results of his blood alcohol test. Shinaut argued that Blanscet had failed to comply with section 42-4-1202(3)(a)(II) of the express consent law because he permitted Shinaut to change from a breath test to a blood test, and the blood test results should be suppressed as a result.

On December 15, 1995, the county court agreed that the blood test result should be suppressed, relying on *Lahey v. Department of Revenue*, 881 P.2d 458 (Colo.App.1994). The People filed an interlocutory appeal with the district court, which affirmed the county court's suppression order. In upholding the suppression order, the district court conclud-

1. The issues for certiorari were stated as follows:

   1. Whether the standard set forth in *Lahey v. Department of Revenue*, 881 P.2d 458 (Colo. App.1994), applies in a criminal Driving Under the Influence case when the defendant changes his mind regarding which chemical test to take, absent any suggestion from the arresting officer, and when the chemical test produced valid results.
   2. Assuming, arguendo, that *Lahey* does apply in the instant case, did the trial court err in determining that suppression of the collected blood specimen was the appropriate sanction.

2. In 1994, the General Assembly relocated section 42-4-1202(3)(a)(II) to section 42-4-1301(7)(a)(II), 17 C.R.S. (1996 Supp.), without substantive changes. Hereinafter, we will refer only to the express consent law as it was codified at the time of Shinaut's arrest.

3. The county court granted a mistrial after the prosecutor asked a question of Blanscet, while he was on the stand, regarding potentially incriminating statements that Shinaut made after his arrest. The police report made no mention of any such statements, and the prosecuting attorney did not put the defense on notice of these statements. The court determined that although a discovery violation of C.R.C.P. 16 had not occurred, the question and the response were unfair and prejudicial.

ed that in "applying the Express Consent Law and *Lahey* to this case, once the defendant elected to take a breath test, Blanscet should have administered that test and only that test."

## II.

## A.

### *The Officer Should Not Have Permitted The Driver To Change His Test Selection*

In the first instance, Blanscet properly gave Shinaut the option to elect either a blood test or a breath test pursuant to the law, but he then improperly allowed Shinaut to change his selection. The relevant portion of the express consent law states that:

Any person who drives any motor vehicle upon the streets and highways and elsewhere throughout this state shall be required to take and complete, and to co-operate in the taking and completing of, any test or test of his breath or blood for the purpose of determining the alcoholic content of his blood or breath when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle in violation of subsection (1) or (1.5) of this section. Except as otherwise provided in this section, *if such person requests that said test be a blood test, then the test shall be of his blood; but, if such person requests that a specimen of his blood not be drawn, then a specimen of his breath shall be obtained and tested. If such person elects either a blood test or a breath test, such person shall not be permitted to change such election,* and, if such person fails to take and complete, and to cooperate in the completing of, the test elected, such failure shall be deemed to be a refusal to submit to testing.

§ 42–4–1202(3)(a)(II), 17 C.R.S. (1993) (emphasis added).[4]

■ Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. *See People v. District Court,* 713 P.2d 918, 921 (Colo. 1986). We must determine the intent of the legislature as expressed in the language it selected, giving the words selected their plain and ordinary meaning. *See id.* "We 'are not to presume that the legislative body used the language idly and with no intent that meaning should be given to its language.'" *Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 218 (Colo.1996) (quoting *City & County of Denver v. Taylor,* 88 Colo. 89, 94, 292 P. 594, 596 (1930)). Statutory construction which defeats legislative intent should be avoided. *See People v. District Court,* 713 P.2d at 921. "If the language is clear and the intent appears with reasonable certainty, there is no need to resort to other rules of statutory construction." *Id.*

In *DeScala v. Motor Vehicle Division,* 667 P.2d 1360, 1362 (Colo.1983), we stated that the obvious statutory goal of the implied consent law, section 42–4–1202(3)(a), 17 C.R.S. (1973), the predecessor to the express consent law, "is to facilitate citizen cooperation in the enforcement of highway safety." In *Zahtila v. Motor Vehicle Division, Department of Revenue,* 39 Colo.App. 8, 10, 560 P.2d 847, 849 (1977), the court of appeals stated that the "primary purpose of the statute is to obtain scientific evidence of the amount of alcohol in the bloodstream in order to curb drunk driving through prosecution for that offense."

■ The statute before us in this case clearly and unambiguously states that "[i]f such person elects either a blood test or a breath test, such person *shall not* be permitted to change such election." § 42–4–1202(3)(a)(II), 17 C.R.S. (1993) (emphasis added). This provi-

---

**4.** This criminal statute finds its civil counterpart in the administrative revocation proceedings under section 42–2–126(1), 17 C.R.S. (1996 Supp.) (previously codified at section 42–2–122.1, 17 C.R.S. (1993)). The relevant portion of that statute states that one of the purposes of this section is:

To provide safety for all persons using the highways of this state by quickly revoking the

driver's license of any person who has shown himself or herself to be a safety hazard by driving with an excessive amount of alcohol in his or her body and any person who has refused to submit to an analysis as required by section 42–4–1301(7).

§ 42–2–126(1)(a).

sion is plain and mandatory.[5]  *See People v. District Court,* 713 P.2d at 921. The driver has but one selection to make: either a blood test or a breath test. *See Brewer v. Motor Vehicle Division,* 720 P.2d 564, 569 (Colo. 1986); § 42-4-1202(3)(a)(II). "[T]he arresting officer has a corresponding duty to implement the driver's election without allowing the driver to change such election." *Lahey,* 881 P.2d at 459. A driver's failure to cooperate in completing the selected test is deemed a refusal to submit to testing, *see* § 42-4-1202(3)(a)(II), and invokes the license revocation provisions of section 42-2-126.

In *Lahey,* the court of appeals correctly interpreted the mandate of the express consent law: "[T]he General Assembly has removed any discretion an arresting officer may have previously had" regarding change of the selected test. *Id.* at 459. The test selected by the driver is utilized for criminal and civil purposes of the express consent law. *See also Brewer,* 720 P.2d at 568 ("Therefore, it makes sense to require the same blood or breath test under sections 42-4-1202 and 42-2-122.1 and to require that test to be administered in accordance with the health department rules and regulations."). The legislature reasonably chose to prohibit a driver from changing his or her selection of the test to be taken, because the reliability of the blood alcohol test results could be diminished by delay attendant to a driver's change of mind.

We conclude that the arresting officer must implement the driver's initial test selection.

### B.

#### *The Statutory Violation Does Not Require Suppression Of The Blood Test Results*

■ Nevertheless, the People argue that the statutory violation that occurred in this case should not have resulted in suppression of the blood test results. We agree.

The county court erroneously concluded that *Lahey* required or permitted suppression of the blood test results: "Well, I think ... that as in *Lahey,* they found a violation of plaintiff's statutory rights and of the officer's statutory duties such that the results can be suppressed." However, the issue in *Lahey* was whether the defendant's *failure to complete either a blood or breath test* constituted a refusal under the express consent law, *not* whether the results of a test taken by the driver should be suppressed.

When the district court here upheld the county court's suppression ruling, it relied on *People v. Gillett,* 629 P.2d 613, 619 (Colo. 1981) (A trial court has broad discretion to prevent "manifest unfairness in governmental procedures relating to the acquisition and preservation of evidence potentially favorable to an accused."). But that case is inapplicable here. In *Gillett,* no test was administered. The defendants had been arrested for driving under the influence of an intoxicating liquor. *See id.* at 614. After delivering a proper advisement, the arresting officers requested that the defendants take one of the two tests; each defendant requested a blood test. *See id.* at 615. The officers then informed the defendants that the facilities were not available for a blood test and no test of any type would be given. *See id.* When the prosecution proceeded to lodge driving under the influence charges against the defendants, the county court ordered dismissal, concluding that the officers had unfairly denied due process of law. *See id.*

■ Thus, in *Gillett,* after the arresting officers had invoked the implied consent law, they did not proceed with administering a test, the results of which might have been exculpatory. *Id.* at 618. In contrast to a constitutional violation, a statutory violation does not ordinarily require suppression of relevant evidence: "[S]uppression of evidence is a drastic remedy and is generally confined to violations of *constitutional* rights." *People v. Bowers,* 716 P.2d 471, 473 (Colo.1986) (emphasis added). In *Bowers,*

---

5.  *See Black's Law Dictionary* 1375 (6th ed. 1990): "Shall. As used in statutes, contracts, or the like, this word is generally imperative or

mandatory.... The word in ordinary usage means 'must' and is inconsistent with a concept of discretion."

the police committed a technical violation of the rules and regulations of the Board of Health when they administered a breath test to a driver. We explained that such a technical violation raised a question of "evidentiary admissibility and not constitutional suppression." *Id.* at 473; *cf. Thomas v. People,* 895 P.2d 1040, 1045 (Colo.1995) ("We have therefore determined that the failure to demonstrate one's certification to conduct a breath test, a foundational requirement found in section 42–4–1202.2, does not automatically render inadmissible the breath test results at trial.").

The case before us is analogous to *Bowers.* Although section 42–4–1202(3)(b) of the express consent law required compliance with the relevant rules and regulations, we held that "the test results may nonetheless be admitted if the trial court is satisfied that the proponent of such evidence has adequately established that the breath test actually administered was scientifically valid and reliable and was conducted by a qualified person using properly working testing devices." *Bowers,* 716 P.2d at 475.

Shinaut suggests that *Bowers* is inapplicable because it addressed only a technical violation of the rules and regulations of the Board of Health and not a statutory violation. This argument is not persuasive. That statute, section 42–4–1202(3)(b)(I), required compliance with the Board of Health rules; hence, *Bowers* also involved a statutory violation. Nevertheless, we determined that the evidence could be admitted, on remand, if the trial court was satisfied that the validity and reliability of the particular test, and its results, had been established.

Here, Shinaut was administered a blood test in accordance with his request. Erroneous accommodation of a citizen's request by a police officer does not warrant the sanction of excluding evidence. Shinaut was not deprived of any right that would justify rendering the blood test results inadmissible.

### III.

Accordingly, we reverse the suppression rulings of the district court and the county court, and we remand the case for further proceedings consistent with this opinion.