1
 2026 CO 21 Khristina Phillips, Petitioner v. The People of the State of Colorado. Respondent No. 25SC12Supreme Court of Colorado, En BancApril 6, 20262
 
          
 Certiorari to the District Court El Paso County District
 Court Case No. 24CV30024 Honorable David A. Gilbert, Judge
 
 3
 
          
 Attorneys for Petitioner: Wigglesworth Law Offices, LLC Erin
 A. Wigglesworth Denver, Colorado
 
 
          
 Attorneys for Respondent: Michael J. Allen, District
 Attorney, Fourth Judicial District Joseph W. Eden, Deputy
 District Attorney Doyle Baker, Senior Deputy District
 Attorney Colorado Springs, Colorado
 
 4
 
          
 JUSTICE SAMOUR delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE GABRIEL, JUSTICE BERKENKOTTER, and JUSTICE
 BLANCO joined.
 
 5
 
          
 OPINION
 
 
          
 SAMOUR, JUSTICE
 
 
          ¶1
 The principle that every person accused of a crime is cloaked
 in the presumption of innocence lies at the very bedrock of
 our justice system. And the right to a speedy trial
 "implements that presumption by 'prevent[ing] undue
 and oppressive incarceration prior to trial, . . .
 minimiz[ing] anxiety and concern accompanying public
 accusation[,] and . . . limit[ing] the possibilities that
 long delay will impair the ability of an accused to defend
 himself.'" Betterman v. Montana, 578 U.S.
 437, 442 (2016) (alterations and omissions in original)
 (quoting United States v. Marion, 404 U.S. 307, 320
 (1971)). The right to a speedy trial takes top billing in
 this opinion.
 
 
          ¶2
 The defendant, Khristina Phillips, claims that her statutory
 right to a speedy trial was violated as a result of the delay
 caused by the People's pursuit of an improper pretrial
 appeal from the county court to the district court. The
 People counter that their pretrial appeal was proper and thus
 tolled the speedy trial deadline. Because Colorado's
 speedy trial statute provides that a defendant's speedy
 trial deadline is tolled during the pendency of a pretrial
 appeal only if the appeal is interlocutory, see
 § 18-1-405(6)(b), C.R.S. (2025), the parties'
 disagreement hinges on whether the People's appeal
 qualified as "interlocutory."
 
 
          ¶3
 As relevant here, our jurisprudence makes clear that an
 appeal qualifies as interlocutory under the speedy trial
 statute when the prosecuting attorney's
 
 6
 
 assertion that the appeal is legally authorized has arguable
 merit. People v. Gallegos, 946 P.2d 946, 952-53
 (Colo. 1997). So, the question we must answer is
 whether the People's contention that its pretrial appeal
 was authorized had arguable merit.
 
 
          ¶4
 The People fasten their position firmly to Crim. P. 37.1(a),
 which authorizes an interlocutory appeal from a ruling by the
 county court granting a "motion to suppress
 evidence." Despite their efforts to dress up their
 pretrial appeal, however, the People can't make it fit
 within Crim. P. 37.1(a). No matter what gloss they attempt to
 place on that appeal, the People cannot escape the fact that
 it concerned an evidentiary ruling, not a
 suppression ruling. In criminal motions practice,
 the word "suppress" operates as a term of art-an
 instruction to the court to bar from trial any evidence
 procured illegally, usually in violation of the
 defendant's constitutional rights or protections. This
 stands in stark contrast to a ruling precluding evidence
 based on the rules of evidence.
 
 
          ¶5
 We now conclude that the People's assertion that their
 pretrial appeal was authorized lacked arguable merit.
 Therefore, the appeal did not toll the speedy trial deadline,
 and Phillips's statutory right to a speedy trial was
 violated. Accordingly, we reverse the district court's
 judgment and remand the case to the district court with
 instructions to return it to the county court so the county
 court may vacate Phillips's judgment of conviction and
 dismiss the case with prejudice.
 
 7
 
          I.
 Facts and Procedural History
 
 
          ¶6
 Phillips provided daycare to children in her home. A woman
 who had used Phillips's daycare service learned that
 Phillips's teenage son had done something "very
 inappropriate" with her daughters. Several months later,
 the same woman learned that Phillips's son had been under
 a blanket with one of her daughters. Shortly thereafter, the
 woman stopped bringing her children to Phillips's
 daycare. The woman then learned of additional incidents of
 improper conduct that had occurred while her daughters were
 at Phillips's daycare, and she made a report to the
 police.
 
 
          ¶7
 Detective Donya Davis was assigned to investigate the
 allegations against Phillips's son. As part of that
 investigation, Detective Davis asked Phillips to come to the
 police station for an interview. Phillips did so willingly,
 and the interview was video recorded.
 
 
          ¶8
 During her interview, Phillips described her son's
 sexualized behavior. She explained how her son cut open the
 crotches of dolls and stuffed animals, masturbated using
 underwear belonging to others (including the children
 attending daycare), masturbated using the couch, stalked
 girls, and used electronic devices to watch pornography.
 
 
          ¶9
 After the interview, the People charged Phillips with one
 count of child abuse-for unlawfully, knowingly, or recklessly
 permitting children to be placed
 
 8
 
 in a situation that posed a threat to their wellbeing-and one
 count of operating a childcare facility without a license.
 Following Phillips's not guilty plea, the county court
 and the parties agreed on the speedy trial deadline. Before
 trial, Phillips filed a motion to suppress the video of her
 interview, arguing that Detective Davis had violated her
 Miranda rights. The court held a hearing and
 reviewed the video of the interview. It found that Phillips
 was in custody during the latter part of the interview, and
 therefore law enforcement had violated her Fifth Amendment
 privilege against self-incrimination by not giving her a
 Miranda advisement when her custodial status
 changed. Accordingly, the court suppressed a portion of the
 video.
 
 
          ¶10
 Pursuant to Crim. P. 37.1(a), the People timely filed an
 interlocutory appeal in the district court challenging the
 suppression order. The district court reversed. It determined
 that Phillips was not in custody at any point during the
 interview and therefore no Miranda violation had
 occurred and no part of the interview should have been
 suppressed. On remand, the parties agreed that the speedy
 trial deadline had been tolled during the pendency of the
 People's interlocutory appeal. Taking that tolling period
 into account, the county court and the parties identified a
 new speedy trial deadline.
 
 9
 
          ¶11
 Later, at the pretrial readiness conference held seven days
 before the rescheduled jury trial, both parties announced
 ready. The parties did not discuss their trial exhibits at
 that time.
 
 
          ¶12
 At approximately 8:00 p.m. on the Monday before the Wednesday
 trial, the prosecutor informed defense counsel by email that
 he intended to introduce into evidence the entirety of
 Phillips's interview video. In the same email, the
 prosecutor asked counsel if there were substantive objections
 to any parts of the video. He noted that he was "just
 trying to work out the clip beforehand so we don't have
 to cut video while we have a jury."
 
 
          ¶13
 Less than forty-eight hours later, on the morning of trial,
 the prosecutor notified the court of his intention to offer
 the video into evidence. He added that he wanted to
 "hash out whatever sort of substantive objections there
 may be because it is a lengthy video." Defense counsel
 objected to the introduction of the video, explaining that
 parts of it were inadmissible. The judge expressed
 frustration, noting that, although this case had been pending
 for a year and a half, the prosecutor had raised this issue
 at the eleventh hour and was essentially requesting that
 counsel and the court review and edit the video while the
 prospective jurors were waiting in the assembly room.
 Further, the judge stated that the interview was duplicative
 of Detective Davis's anticipated testimony and that a
 large portion of it was irrelevant or unfairly prejudicial.
 
 10
 
          ¶14
 After a brief recess, the prosecutor asked the court to
 clarify whether it had ruled "that the entirety of the
 interview between Detective Davis and . . . the Defendant
 [was] suppressed." (Emphasis added.) The judge
 responded that he was "not suppress[ing]" the video
 but merely excluding it because (1) it was
 duplicative of other evidence, (2) portions of it were
 irrelevant and thus inadmissible under CRE 401, and (3) parts
 of it were relevant but unfairly prejudicial and therefore
 inadmissible under CRE 403. Then, following another brief
 recess, the prosecutor made a record that he intended to play
 the entire video and, if the court did not allow it, he would
 request a continuance so his office could consider filing
 another interlocutory appeal.
 
 
          ¶15
 The judge informed the prosecutor that any request for a
 continuance would be denied. He explained again that he had
 not "suppressed" any evidence. Rather, remarked the
 judge, his ruling was strictly evidentiary, so it could not
 serve as grounds for an interlocutory appeal. Continuing, the
 judge reiterated that the video was cumulative, contained
 irrelevant information, was unfairly prejudicial, and would
 cause confusion, undue delay, and a waste of the jury's
 time. The judge emphasized that he was "exercising [his]
 authority in terms of the admission of evidence under CRE
 401, 402, and 403."
 
 
          ¶16
 Partway through jury selection, the prosecutor told the judge
 that his office had filed a notice of an interlocutory appeal
 in the district court. After determining
 
 11
 
 that his court's jurisdiction had been transferred to the
 district court, the judge stopped the proceedings and
 declared a mistrial. He stressed, however, that he did not
 believe the People had a legal basis to file an interlocutory
 appeal because he had not suppressed the video.
 
 
          ¶17
 The district court later dismissed the People's appeal
 for lack of jurisdiction. It reasoned that, "[b]y the
 plain language of Crim. P. 37.1[,] there must be
 'suppression' of evidence by the [c]ounty
 court for this [c]ourt to have jurisdiction to hear this
 interlocutory appeal." The district court then
 determined that no evidence had been suppressed; in fact, the
 court commented that "[t]here is nothing unusual about
 requiring inadmissible evidence to be edited out of a
 defendant's videotaped interview before it is presented
 to a jury."
 
 
          ¶18
 On remand, Phillips moved to dismiss, arguing that her rights
 to a speedy trial and due process had been violated. Phillips
 maintained that, because there were no valid grounds for the
 second pretrial appeal filed by the People, the speedy trial
 deadline should not have been tolled during the pendency of
 that appeal. And it was uncontested that, without that
 tolling, the speedy trial deadline had passed.
 
 
          ¶19
 The county court denied Phillips's motion. It found that
 the appeal had been "taken by the People in good
 faith" and that no due process violation had occurred.
 
 12
 
          ¶20
 In the meantime, the People had edited the video. And, after
 denying Phillips's motion to dismiss, the court decided
 that the edited video eliminated any concerns related to CRE
 401-403. It thus admitted the edited video into evidence.
 Hence, despite the county court's earlier denial of the
 People's motion for a continuance to edit the video, and
 despite the district court's dismissal of the
 People's second pretrial appeal as unauthorized, the
 People were nevertheless allowed to play an edited version of
 the video to the jury.
 
 
          ¶21
 The jury found Phillips guilty of both charges. Phillips
 appealed to the district court, arguing, as pertinent here,
 that her speedy trial and due process rights had been
 violated because the prosecution's second pretrial appeal
 was not interlocutory and thus did not toll the speedy trial
 deadline. But the district court was unpersuaded and
 affirmed. People v. Phillips, No. 24CV30024, at 3
 (Dist. Ct., El Paso Cnty., Dec. 2, 2024) (unpublished
 order).[1]
 
 
          ¶22
 The district court concluded that the record demonstrated
 "that the People were operating in good faith in
 deciding to file an interlocutory appeal on the belief that
 they had a strong claim that the [county] [c]ourt acted
 without authority
 
 13
 
 in excluding the evidence already found to have been legally
 obtained in the first interlocutory appeal."
 Id. at 2. Elaborating, the court stated that the
 People had made "a colorable argument that the trial
 court's exclusion of the [video] warranted an
 interlocutory appeal pursuant to the less restrictive
 definitions of Crim. P. 37.1(a)." Id. Thus, the
 court ruled that the speedy trial deadline had been tolled
 while the second pretrial appeal was pending. Id.
 
 
          ¶23
 Phillips timely sought our review, and we granted her
 petition.[2]
 
 
          II.
 Standard of Review
 
 
          ¶24
 Whether a defendant's statutory right to a speedy trial
 was violated hinges on our interpretation of section
 18-1-405, the governing statute. The interpretation of a
 statute implicates "a question of law, which we review
 de novo." People v. Lucy, 2020 CO 68, ¶
 19, 467 P.3d 332, 336 (quoting People v. Rosas, 2020
 CO 22, ¶ 21, 459 P.3d 540, 545). Additionally, the
 construction of our procedural rules "is a question of
 law that is reviewed de novo." People v. Zhuk,
 239 P.3d 437, 438 (Colo. 2010) (involving both the rules of
 criminal procedure and the rules of appellate
 
 14
 
 procedure). Lastly, we review a district court's
 application of our precedent de novo. Gallegos v. Colo.
 Ground Water Comm'n, 147 P.3d 20, 28 (Colo. 2006).
 
 
          III.
 Analysis
 
 
          A.
 Colorado's Statutory Right to a Speedy Trial
 
 
          ¶25
 The statutory right to a speedy trial in Colorado guarantees
 that a defendant will be "brought to trial . . . within
 six months from the date of the entry of a plea of not
 guilty." § 18-1-405(1). If a defendant is not
 brought to trial within this timeframe, "the pending
 charges shall be dismissed, and the defendant shall not
 again" be charged "for the same offense, or for
 another offense based upon the same act or series of acts
 arising out of the same criminal episode." Id.
 Section 18-1-405's shield of protection aims to
 effectuate the constitutional right to a speedy trial.
 Lucy, ¶ 20, 467 P.3d at 336. As such, the
 statute doesn't actually create any rights; rather, it
 stands as a vital bulwark in defense of the constitutional
 right to a speedy trial. Id.
 
 
          ¶26
 The trial court and the prosecution bear the burden of
 compliance with section 18-1-405(1). Lucy, ¶
 21, 467 P.3d at 336. To meet its burden, "the trial
 court must make 'a record sufficient for an appellate
 court to determine statutory compliance.'"
 Id., 467 P.3d at 336-37 (quoting Marquez v.
 Dist. Ct., 613 P.2d 1302, 1304 (Colo. 1980)).
 
 15
 
          ¶27
 Whereas subsections (3), (3.5), (4), and (5.1) of section
 18-1-405 describe circumstances when the speedy trial period
 may be extended, subsection (6) sets forth
 circumstances that toll the speedy trial deadline.
 Lucy, ¶ 22, 467 P.3d at 337. Under paragraph
 (b) of subsection (6), "[t]he period of delay caused by
 an interlocutory appeal," whether brought by the
 defendant or the prosecution, must be excluded from the
 computation of the time within which the defendant must be
 brought to trial. § 18-1-405(6)(b).
 
 
          B.
 The People's Second Pretrial Appeal Did Not Constitute an
 Interlocutory Appeal Under Section 18-1-405(6)(b)
 
 
          ¶28
 The People argue that their second pretrial appeal
 constituted an interlocutory appeal and therefore tolled the
 speedy trial deadline pursuant to subsection (6)(b). Phillips
 disagrees. To bring the matter to rest, we must ascertain
 what qualifies as an interlocutory appeal for purposes of the
 speedy trial statute.
 
 
          ¶29
 The speedy trial statute does not define the term
 "interlocutory appeal." But this isn't a trail
 we're blazing for the first time. We've previously
 charted this stretch of legal terrain.
 
 
          ¶30
 In Gallegos, we were called upon to decide whether
 the prosecution's appeal of a partial dismissal of the
 multi-count information at the preliminary hearing qualified
 as an interlocutory appeal within the meaning of the speedy
 trial statute. 946 P.2d at 948. We held that an interlocutory
 appeal under section 18-1-405(6)(b):
 
 16
 
 is an appeal which is taken in good faith before a
 defendant has been convicted and sentence is imposed, and
 which necessarily disrupts the course of proceeding to a
 final resolution of the allegations before the court. An
 appeal is taken in good faith when the assertion that such an
 appeal is authorized has arguable merit, is not taken for the
 purpose of delay, and the issues raised have a substantial
 effect on the prosecution's case.
 
 
 Gallegos, 946 P.2d at 952-53 (emphases added).
 
 
          ¶31
 Thus, to satisfy the good-faith test from Gallegos,
 the People must show that: their assertion that the appeal
 was legally authorized had arguable merit; the appeal was not
 taken for the purpose of delay; and the issues raised in the
 appeal had a substantial effect on the People's case.
 Because we conclude that the People's assertion that
 their appeal was authorized had no arguable merit, we need
 not address whether the People have established that their
 appeal was taken for a non-dilatory purpose and that the
 issues raised had a substantial effect on their case.
 Accordingly, we keep our discussion on a short leash.
 
 
          1.
 The People's Assertion That Their Appeal Was Legally
 Authorized Lacked Arguable Merit
 
 
          ¶32
 Under Gallegos, whether the People's assertion
 that their appeal was legally authorized had arguable merit
 requires us to "construe the language of the speedy
 trial statute and other related statutes in order to
 ascertain and effectuate the intent of the General
 Assembly." Id. at 950. As mentioned, the
 language of the speedy trial statute doesn't move the
 needle on this front because it doesn't define
 "interlocutory appeal." But the language of Crim.
 P. 37.1(a), which governs
 
 17
 
 interlocutory appeals from the county court to the district
 court, and C.A.R. 4.1, which governs interlocutory appeals
 from the district court to our court, does. Construing that
 language and drawing strength from our relevant
 jurisprudence, we conclude that the People's assertion
 that their appeal was authorized lacked arguable merit.
 
 
          a.
 The Language of Crim. P. 37.1(a), "Interlocutory Appeal
 from the County Court"
 
 
          ¶33
 We first turn to the language of Crim. P. 37.1(a). Crim. P.
 37.1(a) allows prosecutors to file an interlocutory appeal in
 the district court following a county court ruling in limited
 circumstances:
 
 
 The prosecuting attorney may file an interlocutory
 appeal in the district court from a ruling of a county
 court granting a motion made in advance of trial by
 the defendant for return of property and to suppress
 evidence or granting a motion to suppress
 evidence or granting a motion to suppress an
 extra-judicial confession or admission; provided that
 the prosecuting attorney certifies to the judge who granted
 such motion and to the district court that the appeal is not
 taken for purposes of delay and that the evidence is a
 substantial part of the proof of the charge pending against
 the defendant.
 
 
 (Emphases added.)
 
 
          ¶34
 The People maintain that the language of this rule accords
 arguable merit to their position. Specifically, homing in on
 the rule's repeated use of the word "suppress,"
 the People contend that their appeal was in response to an
 order by the county court that "suppress[ed]
 evidence." But the plain meaning of the word
 "suppress" in criminal law contradicts the
 People's argument. Id.
 
 18
 
          ¶35
 The word "suppress" in criminal motions practice is
 a specialized term denoting the exclusion from trial of any
 evidence procured illegally, typically in violation of the
 defendant's constitutional rights or protections.
 Black's Law Dictionary confirms this understanding. It
 defines a "motion to suppress" as a "pretrial
 motion to exclude evidence from a criminal trial; esp., a
 request that the court prohibit the introduction of illegally
 obtained evidence." Motion to Suppress,
 Black's Law Dictionary (12th ed. 2024).
 
 
          ¶36
 In line with this established legal meaning, our court has
 acknowledged that the "suppression of evidence is . . .
 generally confined to violations of constitutional
 rights." People v. Bowers, 716 P.2d 471, 473
 (Colo. 1986). Indeed, we have gone so far as to indicate on
 multiple occasions that suppression is generally reserved for
 evidence obtained in violation of constitutional rights or
 protections and does not normally extend to evidence
 collected in violation of statutory rights. See,
 e.g., People v. Shinaut, 940 P.2d 380, 383
 (Colo. 1997) ("In contrast to a constitutional
 violation, a statutory violation does not ordinarily require
 suppression of relevant evidence ...."); Dike v.
 People, 30 P.3d 197, 200 (Colo. 2001) ("[W]hen
 noncompliance with a statute does not violate the
 defendant's constitutional rights, the suppression of
 evidence derived from such error may not be
 appropriate."); People v. Clayton, 207 P.3d
 831, 838 (Colo. 2009) ("Suppression of evidence is
 generally reserved to remedy violations of constitutional
 rights ....").
 
 19
 
          ¶37
 The record here belies the People's contention that their
 appeal was based on the suppression of evidence and was thus
 authorized by Crim. P. 37.1(a). The county court judge did
 not preclude any evidence that was illegally obtained, let
 alone evidence allegedly collected in violation of
 Phillips's constitutional rights or protections. Far from
 it. The judge stated, no less than five times, that he was
 not suppressing the video of Phillips's
 interview. Instead, he explained, he was "exercising
 [his] authority . . . under [CRE] 401, 402, and 403" and
 keeping the video out because it was "cumulative"
 and its probative value was substantially outweighed by
 concerns related to "unfair prejudice,"
 "confusion," "und[ue] delay," and
 "waste of time." Thus, the judge made it plain that
 his ruling was purely evidentiary.
 
 
          ¶38
 Notably, the judge contrasted this evidentiary ruling with
 his previous ruling on the "suppression
 issue"-namely, whether the interview of Phillips
 violated her Fifth Amendment right against
 self-incrimination-which had already been "dealt with
 through an [i]nterlocutory [a]ppeal" that properly
 tolled the speedy trial statute. The judge informed the
 People, in no uncertain terms, that the evidentiary ruling
 excluding the video could not be challenged through an
 interlocutory appeal. Rather than heed the judge's
 admonition, however, the People went forward with their plan
 to appeal.
 
 20
 
          ¶39
 The People nevertheless claim that suppress is
 merely the twin of exclude. In this regard, the
 People direct us to the "common parlance" usage of
 the word "suppress," suggesting that it simply
 means "to keep from public knowledge . . . to keep
 secret." But that dog won't hunt here given the
 universally accepted understanding of "suppress" in
 the specific context of criminal motions practice. In this
 context, suppress and exclude do not travel
 together as interchangeable terms.
 
 
          ¶40
 We're not persuaded otherwise by the People's
 reliance on one sentence from Murray v. Just In Case Bus.
 Lighthouse, LLC, 2016 CO 47M, ¶ 23, 374 P.3d 443,
 452, a civil case. The People wrench from its context our
 passing reference to the word "suppress" there as
 we discussed the trial court's discretion to exclude
 evidence that doesn't clear the CRE 403 bar. See
 id. At no point in Murray did we touch on-much
 less undertake any analysis of-the specific use of the term
 "suppress" in criminal cases. Hence, the invocation
 of Murray cannot carry the day for the People.
 
 
          ¶41
 Significantly, were we to sign off on the People's
 interpretation of the term "suppress" in Crim. P.
 37.1(a), the practical result would be to greenlight
 interlocutory appeals following any adverse pretrial
 evidentiary ruling. This, in turn, would all but hand
 prosecutors a blank check to toll the speedy trial deadline
 based on any unfavorable evidentiary ruling. Of
 course, that would be an absurd
 
 21
 
 result, and we must eschew interpretations that lead to
 absurd results. See McCoy v. People, 2019 CO 44,
 ¶ 38, 442 P.3d 379, 389 (stating that we must avoid
 construing statutory language in a way "that would
 render any words or phrases superfluous or lead to illogical
 or absurd results"); People v. Angel, 2012 CO
 34, ¶ 17, 277 P.3d 231, 235 (explaining that when we
 construe the rules of criminal procedure, we employ the same
 principles applicable to statutory interpretation).
 
 
          ¶42
 The authority to bring interlocutory appeals is circumscribed
 because such appeals necessarily subvert the adjudicatory
 process. Nothing in the language of Crim. P. 37.1(a) reflects
 an intent to grant prosecutors carte blanche to interrupt
 proceedings in this way, let alone to encourage gamesmanship
 by giving them free reign to engage in dilatory practices
 when it is to their advantage.
 
 
          ¶43
 Ultimately, the language of Crim. P. 37.1(a) adds no weight
 to the People's position. Still, our analysis must go
 further.
 
 
          b.
 The Language of C.A.R. 4.1, "Interlocutory Appeals in
 Criminal Cases" from District Court to This
 Court
 
 
          ¶44
 While Crim. P. 37.1(a) provides the grounds for interlocutory
 appeals from the county court to the district court, C.A.R.
 4.1(a) provides the grounds for interlocutory appeals from
 the district court to our court. Of course, this is an appeal
 from the county court to the district court. So, why are we
 bothering with C.A.R. 4.1(a)? Because the People contend that
 the divergence in language between Crim. P. 37.1(a) and
 C.A.R. 4.1(a) bestows arguable merit to their
 
 22
 
 assertion that their appeal was authorized by Crim. P.
 37.1(a). We're not sold. Quite the opposite: The language
 of C.A.R. 4.1(a) supports our conclusion.
 
 
          ¶45
 C.A.R. 4.1(a) states as follows:
 
 
 The state may file an interlocutory appeal in the
 supreme court from a district court order granting a
 defendant's pretrial motion under Crim. P. 41(e) and (g)
 and Crim. P. 41.1(i) for return of property and to
 suppress evidence or granting a motion to suppress
 an extra-judicial confession or admission, provided that
 the state certifies to the judge who issued the order being
 appealed and to the supreme court that the appeal is not
 taken for purposes of delay and that the evidence is a
 substantial part of the proof of the charge pending against
 the defendant.
 
 
 (Emphases added.)
 
 
          ¶46
 Contrasting the two rules, the People note that, although
 Crim. P. 37.1(a) authorizes interlocutory appeals from
 any rulings granting motions to suppress evidence,
 C.A.R. 4.1(a) authorizes interlocutory appeals only from
 rulings granting motions to suppress evidence pursuant to
 Crim. P. 41(e), 41(g), or 41.1(i).[3] The People infer
 that, unlike C.A.R. 4.1(a), which restricts interlocutory
 appeals to appeals based on the three enumerated criminal
 rules (Crim. P. 41(e), 41(g), and 41.1(i)), Crim. P. 37.1(a)
 sweeps in a much broader swath of appeals and includes the
 appeal at issue in this case. But that doesn't wash with
 us.
 
 23
 
          ¶47
 To begin with, the People overlook that C.A.R. 4.1(a) also
 refers to a district court's order granting "a
 motion to suppress an extra-judicial confession or
 admission." This part of the rule makes no reference to,
 and is therefore not restricted by, Crim. P. 41(e), 41(g),
 and 41.1(i).
 
 
          ¶48
 More importantly, the People's argument disregards the
 similarities between Crim. P. 37.1(a) and the
 contents of the three criminal rules listed in C.A.R.
 4.1(a). A side-by-side comparison drives the point home:
 
 
 
 
 
 
 Crim. P. 37.1(a)
 
 
 
 
 Rules Listed in C.A.R. 4.1(a)
 
 
 
 
 
 
 Crim. P. 37.1(a) (first enumerated basis for appeal):
 "[A] motion ... for return of property and to
 suppress evidence"
 
 
 
 
 Crim. P. 41(e):
 
 
 "[A] motion for Return of Property and to
 Suppress evidence"
 
 
 
 
 
 
 Crim. P. 37.1(a) (second enumerated basis for
 appeal): "[A] motion to suppress evidence"
 
 
 
 
 Crim. P. 41.1(i):
 
 
 "[A] motion to suppress"
 
 
 
 
 
 
 Crim. P. 37.1(a) (third enumerated basis for appeal):
 "[A] motion to suppress an extra-judicial
 confession or admission"
 
 
 
 
 Crim. P. 41(g):
 
 
 "(A motion for] Suppression of Confession or
 Admission"
 
 
 
 
 
 
          As this
 chart highlights, the substance of Crim. P. 37.1(a) directly
 mirrors the substance of the three rules referenced in C.A.R.
 4.1(a).
 
 
          ¶49
 In short, the People's reliance on C.A.R. 4.1(a)
 backfires; that rule drives a stake through the heart of
 their argument because it aligns with Crim. P. 37.1(a).
 Accordingly, we conclude that C.A.R. 4.1(a) gives the People
 no foothold.
 
 24
 
          c.
 Relevant Case Law
 
 
          ¶50
 Our precedent applying Crim. P. 37.1's predecessor, Crim.
 P. 41.2, lends weight to our conclusion that the People's
 assertion that their appeal was legally authorized lacked
 arguable merit. This case law is particularly persuasive
 because, as relevant here, Crim. P. 41.2(a) and its
 offspring, Crim. P. 37.1(a), are nearly identical.
 
 
          ¶51
 Applying Crim. P. 41.2(a) in Bowers, we explained
 that, since any issues related to evidentiary admissibility
 were "not constitutional in character, rulings on such
 issues [were] not within the scope of Crim. P. 41.2[a]."
 716 P.2d at 473. The People push back, though, arguing that
 Bowers is inapposite because it relied on cases
 dealing with C.A.R. 4.1(a), not Crim. P. 37.1(a). But
 we've already determined that C.A.R. 4.1(a) and Crim. P.
 37.1(a) are similar in substance. Besides, by citing C.A.R.
 4.1(a) case law to support its holding, Bowers
 directly linked C.A.R. 4.1(a) and Crim. P. 41.2(a) (Crim. P.
 37.1(a)'s precursor). This connection is compelling
 because C.A.R. 4.1(a) does not permit interlocutory appeals
 of pretrial evidentiary rulings. See People v.
 Lindsey, 660 P.2d 502, 505 (Colo. 1983). Rather,
 appellate review under C.A.R. 4.1(a) is "proper where
 evidence was suppressed due to an unlawful search
 and seizure, an involuntary confession or admission, or an
 improperly ordered or insufficiently supported,
 nontestimonial identification." People v.
 Braunthal, 31 P.3d 167, 171 (Colo. 2001) (emphasis
 added).
 
 25
 
          ¶52
 In harmony with C.A.R. 4.1(a)'s text, we have cautioned
 prosecutors bringing C.A.R. 4.1(a) appeals that they
 "may not . . . 'piggyback' issues . . . to
 obtain review of pre-trial evidentiary
 decisions." Lindsey, 660 P.2d at 505 (emphasis
 added) (quoting People v. Morrison, 583 P.2d 924,
 927 (Colo. 1978)). And we see no reason to break stride in
 extending Lindsey's rationale here, especially
 considering the parallel nature of C.A.R. 4.1(a) and Crim. P.
 37.1(a).
 
 
          ¶53
 Tellingly, mapping the holding in Lindsey onto the
 present circumstances comports with Crim. P. 37.1(a)'s
 traditional usage. A review of our jurisprudence reflects
 that whenever we've analyzed Crim. P. 37.1(a), the appeal
 at issue has stemmed from a ruling suppressing evidence
 purportedly obtained illegally and in violation of a
 defendant's constitutional rights or protections.
 See, e.g., People v. Sapp, 934 P.2d 1367,
 1370 (Colo. 1997) (involving a Crim. P. 37.1(a) interlocutory
 appeal taken in response to a ruling suppressing the
 defendants' statements as "involuntary and in
 violation of Miranda"); Tate v.
 People, 2012 CO 75, ¶ 6, 290 P.3d 1268, 1269
 (dealing with a Crim. P. 37.1(a) interlocutory appeal taken
 in response to the suppression of evidence obtained through
 an unlawful seizure); Zhuk, 239 P.3d at 438
 (implicating a Crim. P. 37.1(a) interlocutory appeal taken in
 response to the suppression of evidence based on a
 Miranda violation). We are aware of no cases, and
 the People have unearthed none, suggesting that a Crim. P.
 37.1(a) interlocutory appeal may be based on a pretrial
 evidentiary ruling.
 
 26
 
          C.
 The People's Interlocutory Appeal Did Not Toll the Speedy
 Trial Deadline
 
 
          ¶54
 Having determined that the People's assertion that their
 appeal was authorized lacked arguable merit, the rest of the
 analytical path requires little navigation. Because the
 People failed to clear one of the prongs of the
 Gallegos litmus test-that their assertion that their
 appeal was authorized had arguable merit-we conclude that
 their second pretrial appeal was not taken in good faith and
 thus did not qualify as "interlocutory" for
 purposes of the tolling provision in section 18-1-405(6)(b).
 
 
          IV.
 Conclusion
 
 
          ¶55
 For the foregoing reasons, we reverse the district
 court's judgment. We remand the case to the district
 court with instructions to return it to the county court so
 the county court may vacate Phillips's judgment of
 conviction and dismiss the case with prejudice.
 
 
 ---------
 
 
 Notes:
 
 
 [1] There were three appeals taken from
 the county court to the district court in this case: The
 first pretrial appeal reversing the suppression ruling that
 there had been a Miranda violation; the second
 pretrial appeal, which was dismissed for lack of subject
 matter jurisdiction; and the appeal following Phillips's
 conviction. Three different district court judges presided
 over these appeals.
 
 
 [2] We agreed to review the following
 question:
 
 
 Whether the tolling of speedy trial due to the
 government filing an interlocutory appeal in the district
 court challenging a county court ruling concerning the form
 in which evidence could be presented at trial violates a
 defendant's right to speedy trial and right to due
 process.
 
 
 [3] Because the People's contention is
 cabined to Crim. P. 37.1(a) and C.A.R. 4.1(a), we limit our
 analysis accordingly and do not address any other basis for
 filing an interlocutory appeal.
 
 
 ---------